CHITTENDEN COUNTY,

January Term, 1838.

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE, 
" JACOB COLLAMER,  } *Assistant Justices.*
" ISAAC F. REDFIELD, 

E. L. B. Brooks, *qui tam,* v. George Clayes & Henry S. Morse.

In an action to recover the penalty, for a fraudulent conveyance, full proof must be made, as in criminal actions.

A conveyance may be invalid, so as to be avoided by the creditors of the grantor, and the parties thereto not liable for the penalty of the statute.

To incur the penalty, the intent must be to defraud, and this intent must exist in both parties.

This intent must be found by the Jury.

When a party takes a deed, in trust, unless he intends to defraud at the time of taking the conveyance, he will not be liable if he denies or conceals the truth, although such denial or concealment may be strong evidence of the fraudulent intent.

Although a party takes a conveyance, intending to prevent the creditors of the grantor from attaching; yet, if the intent is to secure the property conveyed, for the benefit of the creditors ultimately, he may not be liable for the penalty.

When the Court were requested to charge the jury, that if certain facts were found, they should find the party guilty, under the statute for taking a fraudulent conveyance, the Court would not have been justified in charging, as requested, inasmuch as they were not requested to charge the jury, that they must find the acts were done *malo animo.*

*Quære,* whether, after a general verdict of not guilty, a new trial can be awarded.

This was a *qui tam* action, brought by the plaintiff, a creditor of Elwood Irish, to recover of the defendants, the penalty of the statute against fraudulent and deceitful conveyances.

Plea—Not guilty.

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

On the trial of this cause, in the County Court, the plaintiff, in support of the issue on his part, gave in evidence four several deeds from Elwood Irish to the defendants, of lands in Shelburne, Charlotte, Starksboro' and Fayston, all dated Oct. 20, 1833, and also, a bill of sale of sundry personal property of the same date. The plaintiff also introduced said Irish as a witness, who testified that he was indebted to the plaintiff, on the said 30th of Oct. 1833, to the amount of about thirty or forty dollars, that he was in possession of considerable property and owed a good deal at that time, but supposed himself good ; that he was on terms of friendship with the defendant, Clayes, and was indebted to him to the amount of about $5000, for which he had executed to him a mortgage a few days previous, viz. on the 25th of the same October, of the principal part of the real estate in question. That after the execution of the said mortgage, the defendant came to him (Irish) and represented, that all his (Irish's) creditors were about to sue him, and attach his property ; that he would be sued for every debt, down to one dollar ; that he needed a friend to step into the boat with him, and take a conveyance of his property to prevent a sacrifice of it ; that Clayes proposed to step in, as a friend, himself, in connexion with the defendant, Morse, and that witness consulted with the defendants. The next day, they came to witness' house, and took a schedule of the property ; that witness then proposed to them to buy in earnest, but Morse said he had land enough already, and had more stock than hay, and Clayes said he could make more money otherwise ; witness made the conveyance, and Clayes gave up the notes secured by his mortgage. It was agreed, that they should go to Burlington, and that Clayes " should take money out of the Bank, and pay me, and I could hand it back." When they got to Burlington, Clayes proposed a different way, viz. to give up the notes which he held against witness, and witness should pay interest on the amount. Morse was reluctant to go into the business, but Clayes said, it was necessary to hold Morse, " to make out a strong team." Witness was absent from home a short time, and on his return, found that the defendants had made a " general sweep" of his property; that he remonstrated with the defendants ; and Clayes said, they must frighten the creditors, and buy up the debts at a

discount. Witness told them to bring in all the debts, and he would pay off all of them in property at an appraisal. Clayes then said, " we may as well tell you first as last, that you have got no property for yourself, or creditors ; we have got the papers to show." At the time of the transfer, the witness proposed to take a paper back, showing the agreement, but Clayes said it would not do ; that the conveyance was all, or nearly all, of his property, and that the object was to prevent attachments by his creditors, and consequent sacrifice. This witness also testified to the value of the property conveyed, which, at his estimate, would amount to about $17000, or $18000.

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

On cross examination, the witness testified, that at the time of the transfer, the real estate was incumbered by the mortgage to Clayes, as stated above, and also portions of it were incumbered by previous incumbrances, viz. a mortgage to one Perry, for $1500, a mortgage to one Seymour of $800, and a mortgage to the trustees of Deming's estate of about $900;—that he was also indebted to the Bank of Burlington, in the sum of $150,00, and to the estate of O. Buell, to the amount of $800, for the larger portion of which Clayes was previously bound ;—that the personal property was attached, to secure the debts to Buell & Perry ; that there was, also, a previous mortgage to Burritt, on which was due $183,00, and an execution in the hands of Bliss, Sheriff, secured on the personal property ; all which debts Clayes, at the time of the conveyance in question, agreed to pay, and to advance the money, if necessary ; that Clayes did pay them in a short time after, and that he was authorized to sell property to pay the debts.

He further testified, that it was not his intention to defraud his creditors, but that he calculated to have all his debts paid. That the agreement was, that the defendants should stand by him as assistants, turn the property, and appropriate the avails to the payment of debts, as fast as the property was sold; keep an exact account, advance money if necessary, and when the business was closed, to return the surplus, if any ; that witness was to allow interest on the amount, and that there was no debt, which was not to be paid, if there were means of paying it.

The plaintiff further gave evidence, tending to show the

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

declarations of Clayes, made after the conveyance, that he had "stepped in" as the friend of Irish, and would stand by him, that he had taken the conveyance to prevent the property being sacrificed, that the object was to sell the property to the best advantage, and not to have it sold at a sacrifice, that they did it for Irish's benefit, &c. and in one instance, when he went to take possession of certain property, that he declared, that he was looking it up, to take care of it, so that the creditors should not get it; that if he did not, it would be attached, and one of the witnesses, who testified to this declaration, added, that Clayes declared that they were going to turn out the property, to pay debts. The plaintiff, also, introduced sundry witnesses, to prove the value of the property conveyed, whose testimony, tended to prove the value to be from $17,000, to $18,000; whereas, the amount of the notes due to Clayes, together with the debts paid by the defendants, was about, $10,000. The defendants gave testimony, tending to prove, that at the time of making the conveyance, the defendants, as a consideration, therefor, gave up the notes to Clayes, which were secured by mortgage as stated above, and also undertook to pay the debts to Seymour, Perry, Buell's estate, Deming's estate, and to Bliss, mentioned above, and insisted that the transaction was a *bona fide* and actual purchase of the property, by the defendants, in consideration of giving up said notes, and payment of the several debts above enumerated.

The defendants also introduced sundry witnesses, whose testimony tended to show, that the value of the property, did not exceed the consideration paid, but according to the valuation of some of them, the value thereof, fell considerably short of the consideration.

The estimate, of the defendants' witnesses, who had attempted a full appraisal, placed the value of the property, at about $9,400.

The counsel for the plaintiff requested the Court to charge the Jury as follows;—

1. If the jury found that Elwood Irish was largely indebted to various individuals, and that he had attachable property, sufficient to pay his debts, and that well known to the defendants, and they or either of them, represented to the said Irish that his creditors were about to secure their debts by

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

attaching his property, and offered to take an absolute conveyance of said property, and did, in fact, take such conveyance, and justify it as *bona fide*, for the purpose of preventing attachments by the said Elwood's creditors, and for the purpose of enabling him to withhold his property from his creditors, until it could be sold at private sale, without sacrifice, to raise money to pay off his, the said Elwood's, creditors, the transaction was fraudulent and within the statute.

2. If they found that it was expressly agreed between Irish and the defendants, by parol, at the time of the conveyance, that the defendants should take an absolute conveyance of all his property, both real and personal, and justify it as a *bona fide* sale to them, for the purpose of preventing attachment of said property, by the creditors of the said Elwood, until they or the said Elwood should dispose of the same at private sale, without sacrifice, to raise money to pay the creditors of the said Elwood, the transaction was fraudulent and within the meaning of the statute.

3. If they found that the defendants received the conveyance of the property of the said Elwood, for the purpose of avoiding any right, debt, or duty of others, and to prevent the creditors of the said Elwood from attaching said property to secure their debts, when they chose, the transaction was fraudulent, and within the statute, although they should find that, when the defendants received said absolute conveyance, it was agreed by parol between the said Elwood and the defendants, that they should claim to be *bona fide* owners of said property, only for the purpose of preventing attachment by the creditors of the said Elwood, and that the defendants should dispose of said property at private sale, without sacrifice, and pay out the money raised by such sales to the creditors of the said Elwood;—or,

4th. If they found that the defendants made use of the mortgage debt due Clayes from Irish, as a valuable consideration to enable Irish to withhold his property from his creditors, it was a fraudulent transaction, within the statute, and the plaintiff should recover the full value of the property conveyed, without deducting said mortgage debt from the value of the estate conveyed by Irish to the defendants;—or,

5th. If they found that the personal property, which the

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

defendants received of the said Irish, on the 30th of Oct. 1833, should go to reduce the debt due Clayes, when the defendants received said conveyance, or to pay off the incumbrances on the real estate, conveyed to them by the said Irish;—that, in either case, this action was sustainable.

The Court charged the jury, among other matters :—That in order to subject the defendants to the penalty in this action, it must appear that the actual intent and purpose of the defendants was corrupt and fraudulent; that the motive was dishonest and the object fraudulent ; that the design must have been, ultimately, to defraud the creditors, and such must have been the tendency of the contract; that the fraud in this case, if any, must have consisted in securing the property to Irish, to the ultimate exclusion of his creditors ; that the question in this case was, was it the purpose of the defendants in this transaction to defraud the creditors of their debts, and was such the tendency of the contract? That the criterion is the intent of the parties *at the time* of making the contract, and the character and tendency of the contract, as it was *then* understood by them; that the first question on this point, upon the evidence, was, whether this conveyance was to be regarded as an absolute conveyance, as contended for by the defendants, or a conveyance upon trust, as contended for by the plaintiff:—That it was in form an absolute conveyance, and if the jury were satisfied that it was in good faith, without any design to defraud or injure creditors, and that a valuable consideration was actually paid, they must find a verdict for the defendants. But if, on the other hand, they were satisfied that the pretended consideration was merely colorable, and the design was to secure the property to Irish for his use and enjoyment, to the exclusion of his creditors, then the case was with the plaintiff. That on this point the value of the property conveyed was material, for if they found the consideration, pretended to be paid, to be grossly inadequate to the value of the property, it afforded strong evidence of a secret and fraudulent trust.; that it was incumbent on the plaintiff, in order to recover, to make out that the conveyance was not in reality absolute, but that there was a secret trust, or understanding and that such trust was fraudulent. That if they were satisfied that any trust was attach-

ed to the conveyance, as the parties understood it, at the time, then the inquiry arose,whether such trust was legal and honest, or fraudulent and illegal ; that on this point the criterion was the same, viz. whether the object and tendency of such trust was to secure the property for the benefit of Irish, to the exclusion of the rights of his creditors ; if so, the transaction was fraudulent. But if, on the other hand, it was actually understood and intended by the parties,that the defendants should dispose of the property to the best advantage and appropriate the avails, as fast as received, to the payment of debts, so far as the property went, or so far as there were debts to be paid, that, in that case, the transaction was not such as would subject the defendants in this action ; that although the object might be to prevent attachments, and consequent sacrifice of the property, yet, if the contract was such as last supposed, it would not fall within the penalty of the statute ; and that on this supposition, any representations, made by the defendants to Irish, to induce him to make the conveyance, if the intent of the conveyance was the honest application of the property in payment of debts, would be immaterial. And further, that if the trust was a legal trust, agreeably to the supposition already made,although the defendants might afterwards deny the trust and refuse to carry it into execution, still, the plaintiff could not recover in this action upon the ground of such denial or refusal, but the creditors might have another remedy.

*Upham* and *Briggs*, for plaintiff.

1. The conveyance from Irish to the defendants was a sweeping one. It included all the property belonging to Irish, both real and personal. Since the time of *Twyne's* case, such a conveyance by a debtor in such circumstances, and for such purposes, has been held to be fraudulent.

Our statute against fraudulent conveyances declares all fraudulent and deceitful conveyances of goods or chattels, &c. utterly null and void, as against the party, whose right, debt, or duty, is endeavored to be avoided, and the statute further declares that "every of the parties to such fraudulent and deceitful conveyance, &c., who, being privy thereto, shall justify the same to be made, had, or executed, *bona fide* and upon good consideration, shall forfeit the full value of such houses, lands, &c." Vide Statute, 266. sect. 7.

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

The rule to be adopted, in construing the statute in question, is obvious. It was made in suppression of fraud and deceit, and should be liberally and benefically expounded, though highly penal. *Cadogan* v. *Kennett.* 2 Cowp. 434. 1 Swift's Dig. 266.

2. All conveyances are fraudulent and void, when the object of the parties is to *hinder, delay, or defraud creditors.* It is essential to every valid conveyance, that there should be not only a valuable consideration, but it must be made *bona fide,* and if there be *mala fides* in the transaction, it is void as to creditors. A debtor may legally prefer a particular creditor, but he must take care to do it in such a manner as not to defraud other creditors. A debtor may also convey his property to trustees, for the payment of his debts, but the object and character of the conveyance should appear upon the face of the deed, or by some other instrument, executed at the time of the conveyance. 1 Swift's Dig. 275, 76, 77.

In the case of *Jackson* v. *Brush,* (20 Johns. Rep. 5) the court held a conveyance, by a person indebted at the time, absolute on the face of it, but intended to enable the grantee to sell the land, and pay the debts of the grantor, rendering the surplus, if any, to him, void, as against his creditors.

So a general conveyance of all a man's property is always considered a badge of fraud, and a *secret trust* between the parties, that the vendor shall have a certain advantage from the estate conveyed, is a conclusive badge of fraud, that will admit of no explanation, and wherever it appears, the conveyance is fraudulent and void. 1 Swift's Dig. 274.

Lord Coke states a *bona fide* conveyance to be, where there is *no trust,* expressed or implied. In all cases, we apprehend, where there is a direct or indirect agreement, that the vendor is to have some allowance, favor or benefit, from the estate conveyed, or where some advantage will result to him from any provision in, or consequence of, the contract, the sale will be void. Vide *Twyne's* case, Co. Abr. 62. *New England Marine Ins. Co.* v. *Chandler,* 16 Mass. R. 279. *Goodwin* v. *Hubbard.* 15 Mass. R. 215. There was a *secret trust* between Irish and the defendants, in relation to the property conveyed, which rendered the conveyance fraudulent and void. The conveyance said one thing, and the *secret* understanding another, and quite a different thing. The debt

to Clayes was to be kept on foot, and Irish was to pay inter-
est on it though the notes were given up.

3. A contract fraudulent in part is void *in toto ;* for as Lord Coke observed in *Fermor's* case, (Co. Rep. Abr. 61.) "The common law doth so abhor fraud and deceit, that all acts, as well judicial as others, which of themselves are just and lawful, yet being mixed with fraud and deceit, are, in judgment of law, wrongful and unlawful;" and the same doctrine is laid down by *Montague,* Ch. J. in *Wimbish* v. *Tailboys,* Plowden 54.

It is generally the object of fraudulent vendors to desire some direct, or indirect advantage from the transaction, but there may be cases, where they can derive no advantage, and yet the sales be fraudulent. It is not therefore an indispensable test. Vide Swift's Dig. 275.

But in the case at bar, the fraudulent grantor, Irish, was to derive a distinct advantage from the transaction. His property was to be kept from the attachments of his creditors, and consequently all loss, which he might otherwise sustain by forced sales of his property, on executions, would be avoided. This would induce him to make the fraudulent conveyances complained of in the plaintiff's declaration.

If the law sanctions such a contract, how long can a debtor *hinder* and *delay* his creditor by such a conveyance ? What rule can this court lay down upon the subject, that will be certain and easy of application ? If the doctrine of the charge of the court below should be sustained, it would enable every insolvent debtor to make a bankrupt law for himself, and one too, that would operate very unequally upon his creditors. If debtors can keep their property locked up in the hands of others, and set their creditors at defiance, for one month, they can for one year, or for any indefinite period. Vide *Hyslop* v. *Clark,* 14 Johns. R. 464.

4. We assert the principle, and believe we can maintain it, that a creditor has a right to attach his debtor's property, whenever he chooses, and the man, who takes a conveyance of it for the purpose of avoiding that right, and *hindering* and *delaying* the creditor in the collection of his debts, subjects himself to the penalty of the statute against fraudulent conveyances.

"An insolvent debtor" said Judge *Van Ness,* in the case

CHITTENDEN,
January,
1838.
—————
Brooks
v.
Clayes &
Morse.

of *Hyslop* v. *Clark*, 14 Johns. Rep. 464, "has no right to place his property in such a situation as to prevent his creditors from taking it under a process of law."

In *Naylor* v. *Fosdick*, 4 Day's Rep. 152, Judge Swift said, a debtor had no right to withdraw his property from the reach of legal process, and thereby compel his creditor to seek his remedy against the person of the debtor only, or his trustees.

*Trumbull*, J. in the same case said, "in this state it has been holden as settled law, that no man can make a conveyance of his effects to a mere trustee, for the payment of debts, with intent to secure the property from attachment and levy. All such deeds and assignments have been adjudged void, under our statute against fraudulent conveyances," and to the same point, we cite *Quincy* v. *Hall*, 1 Pick. Rep. 357, 362. *Widgery et al.* v. *Haskell*, 5 Mass. R. 152.

The charge takes the ground, that the debtor may place his property, for a time, or until he can sell it at private sale to raise money to pay off his debts, beyond the reach of his creditors, for the purpose of preventing attachment, and *hindering* and *delaying* them in the collection of their debts. The charge was erroneous, or the authorities to which we have referred are not law.

Again, it is said by the defendants, that the property was conveyed to them in *trust* for the creditors of Irish. We answer *first*, that the creditors never consented to any such conveyance, and without their consent, it was void. *Stevens et al* v. *Bell*, 6 Mass. R. 342. *Widgery et al.* v. *Haskell*, 5 Mass. R. 152, 3. *Quincy* v. *Hall*, 1 Pick. 357, 62.

In the *second* place, we say, that the conveyances are absolute on the face of them, and no writing was executed showing any *trust ;* and it is well settled, that when no *trust* appears upon the face of a deed, and there is no manifestation nor evidence of it in writing, parol proof is inadmissible to show a *trust.* 1 Johns. Ch. R. 333. 1 Pick. R. 362. 4 Day's R. 149. 2 Swift's Dig. 108. 3 Pick. R. 205.

The conveyance, therefore, placed the property beyond the reach of creditors. In the third place, we say, that the defendants, immediately after receiving the conveyance, denied any trust, and claimed to be the *bona fide* purchasers of the property for a full consideration ; and upon this point, the jury should have been directed to return their verdict for the plaintiff, unless they found, that the defendants were

the *bona fide* purchasers of the property, for a valuable con-
sideration; and we further insist, that if it were true that
the defendants, by parol, agreed to hold the property *in trust*
for the creditors of Irish, and received absolute conveyances
of it under such agreement, and then denied the *trust*, and
claimed to be the *bona fide* owners of the property, by virtue
of said conveyances, the transaction was fraudulent and void,
within the true intent and meaning of the statute, and the
jury should have been so instructed. Again, the representa-
tions made by the defendants to Irish, to induce him to make
the conveyance, taken in connexion with their subsequent
conduct, were evidence tending to show the transaction
fraudulent and the jury should have been so directed.

In conclusion, we insist, that the last request to charge, in re-
lation to the personal property, should have been regarded
and sustained by the County Court. *Naylor* v. *Fosdick*, 4
Day, 152, 153.

*J. Maeck*, for defendants.

1. The proceedings, on exceptions, being in the nature of
a writ of error, the case must be decided upon the excep-
tions alone. *Way* v. *Wakefield*, 7 Vt. R. 223.

2. The plaintiff, to avail himself of any benefit from his
exceptions, must make out the two following propositions.
1. That the law, as laid down by the court, was wrong, as re-
gards actions of this character, generally. 2. That, taking into
consideration the cause, and the evidence to sustain it, in this
particular case, it was wrong, and tended to mislead the jury in
applying the facts. Though the court may not assent to all the
propositions in the charge, yet, if they do not tend to mislead
the jury, the judgment will not be reversed. 6 Vt. R. p. 411.

The court, in their charge, told the jury, that the criterion,
to determine whether the transaction was fraudulent, or not,
was, what was the intent of the parties at the time of the
sale, and the character and tendency of the contract;—
that if the intention was to reserve the property for the bene-
fit of Irish, to the exclusion of his creditors, the case was
with the plaintiff, but, if it was the intent of the parties, and
the character and tendency of the contract was, to appro-
priate the whole property for the benefit of Irish's creditors,
the case was with the defendants.

The case rests upon the correctness of the charge on this
point.

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

The intent is material. The suit is civil in its form, but no further ; and the object is to recover a forfeiture for a crime, committed by the defendants. The idea of a crime supposes an unlawful intent, and an unlawful act, consequent upon the will. 4 East, 1. 13 Petersdorff, 193, in note. 4 Black. Com. 21, et seq. Here, both parties, to make out the case, must have had an unlawful intent.

The very idea of deceit supposes a bad intent. It must be averred, and proved, or no action can be maintained. 3 T. R. 51, *Pasley* v. *Freeman*. *Haycraft* v. *Creasy*, 2 East, 92. *Allen* v. *Addington*, 7 Wend. 9. 8 Johns. 25. 13 Vesey, 131.

In criminal cases, a general felonious intent will not answer, especially, when the offence is created by statute, and the statute makes a particular intent necessary to constitute the offence. Arch'd. Cr. Pl. 27, and cases cited. *Rex* v. *Jukes*, 8 T. R. 536. Leach, 597, Williams' case. Starkie's Evid. 742. The question here was, whether the defendants, at the time of the conveyance, took it with the intent of defrauding or delaying Irish's creditors. This was a question of fact for the jury, exclusively, and was fairly submitted to them. 4 East, 1. 5 T. R. 420. 2 Bos. & Puller, 59. 1 M. & S. 251. Cowp. 432. 7 Wend. 436. 8 Cow. 405. 4 Wend. 303. 6 East, 259. 3 M. & S. 371.

The fallacy of the plaintiff's argument consists in holding those circumstances, which are mere evidences of fraud, and proper to be submitted to a jury, as actual frauds, sufficient to make out his case ; thus, treating the question of intention, either as immaterial, or in point of law, conclusively established, by proof of certain circumstances attending the sale. This would estop the jury, by artificial rules, from finding the truth in criminal cases. The circumstances upon which he relies, as conclusive evidence of fraud, are,—1st, The representations by Clayes to Irish, before the sale,—2d, That by reason of the assignment, Irish's creditors could not immediately attach his property,—3d, That the trust was by parol,—4th, That defendants have subsequently denied the trust.

To the first objection, we answer, that from the whole case it appears, that the representations did not produce any mischievous act.

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

To the second, that it has been held by repeated decisions, that the assignment, by a debtor, of his property for the ultimate benefit of his creditors, does not bring him or his assignee within the act, even though the creditors had not previously assented to it. 6 Vt. R. 600. 3 M. & S. 371. 4 East, 1. 17 Mass. 552. 6 Mass. 239.

To the third objection we answer, that, though the trust was by parol, it could be enforced. It would be singular indeed, if parties, intending to perform an honest act, were to be entrapped and punished, through the mere ignorance of the scrivener, in reducing their contract to writing. This position is founded upon the false assumption, that the intent, with which the act is done, is not material. But the doctrine advanced in the following authorities, would seem to put a quietus on the objections. 4 East, 1. 4 Pick. 104. 2 Pick. 610. 16 Mass. 275. 6 Vt. 426. Powell on Mortgages, 4, et seq. 3 Vt. 565. - 1 Paige, 56. 6 Johns. 417. 1 do. 594. 4 do. 167. 7 do. 40. 2 Cowen, 324. 4 Kent, Com. 142. 8 Wend. 641. 4 Johns. 536. 17 Mass. 164.

To the other objection it is sufficient to say, that if the intention, at the time of the sale, was honest, a subsequent change of views by the defendants will not make them liable in this action. 4 Black. Com. 232, and Chitty's note.

*G. P. Marsh* on the same side.

According to the plain and obvious words of the statute, to constitute the offence complained of, two things must concur.

1. A conveyance fraudulent, *per se*, without respect to the use that may afterwards be made of it; and

2. The conveyance must be justified to be *bona fide*. There cannot be a fraudulent conveyance, within the statute, without guilt in the grantor as well as the grantee, otherwise the contract will not be *covinously* made. Stat. p. 266.

It is against corrupt *collusion* that this statute is directed, and when the fraud is on the side of the vendee alone, there are other penalties and other remedies. *Foster* v. *Hall*, 12 Pick. 89, 100. *Nunn* v. *Wilsmore*, 8 T. R. 521, 530.

The general doctrine of that portion of the charge which is excepted to, is that the criterion of guilt under this statute is, whether the design and tendency of the contract were to benefit the debtor to the injury of the creditor. This is a

Chittenden,
January,
1838.

Brooks
v.
Clayes &
Morse.
plain and intelligible rule, and commends itself to the good sense of every man.

The statute is directed against those collusive, colorable conveyances, whereby some advantage is attempted to be secured for the debtor, in derogation of the rights of the creditor. The rights of the creditor are satisfied by the payment of the debt.

The power to vex and embarrass the debtor to his ruin, and the injury of other creditors, is not a substantive right in the sense of the statute, but is a mere incident of the right to the debt, and if this latter right be secured to him, it would be monstrous to contend, that the statute is intended to punish the party for the attempt to deprive the creditor of a power, the exercise of which could produce no benefit to himself, and only mischief to others. If the case made by the plaintiff be true, the assets were ample to satisfy all the debts of the grantor, and the plaintiff and other creditors have a sufficient remedy by civil proceeding.

Under these circumstances, it would be unparallelled hardship to punish the defendants for a constructive fraud, where no actual injury to the rights of creditors was either designed or effected. *Pickstock* v. *Lyster* 3 M. & S. 371—Note at end of Oliver's Con. *Nunn* v. *Willsmore*, 8 T. R. 521, 530. *Foster* v. *Hall*, 12 Pick. 89, 100. *Mason & Hidden* v. *Gale*, 6 Vt. R. 600. *Gibson* v. *Seymour*, 4 Vt. R. 518. *Johnson* v. *Peak*, 4 Wend. 308. *Jackson* v. *Finnemore*, 7. Wend. 438. 1 Cowp. 77. *Sturgess* v. *Maitland*, *Anthon's N. P.* 153.

The opinion of the Court was delivered by

WILLIAMS, C. J.—The present action is highly penal, as it inflicts on each of the parties offending a forfeiture of the full value of the property, attempted to be conveyed, besides making the conveyance void. Although the forfeiture is to be recovered by the person attempted to be injured, yet it does not operate as an extinguishment of his right or debt. The statute is to receive a liberal construction, for the purpose of setting aside the conveyance, but to be construed strictly when it inflicts a penalty. It has been laid down that the rule of evidence must be the same, as in criminal cases. Full proof must be given, and the case must be established beyond a reasonable doubt. A conveyance may

be fraudulent so as to be inoperative and void, as against the <span>CHITTENDEN,<br>January,<br>1838.</span> creditors of the person making it, and yet, the penalty of the statute not be incurred. To constitute the offence, there must be the wicked intent, the *malus animus*, at the time of the conveyance. This was evidently acknowledged by all the Court, in the case from 4 East, of Meux, *qui tam*, v. *Howell & Atlee.* By subjecting every of the parties to a fraudulent conveyance, to the penalty, it appears that the intent must exist in the mind of the grantor and grantee; that they both combine and intend to avoid the right, debt or duty of another. This seems to have been the view of the Court in Massachusetts, in the case of *Bridge* v. *Eggleston*, 14 Mass. 245, and in *Foster* v. *Hall*, 12 Pick. 89.

Brooks
*v.*
Clayes &
Morse.

The intent, with which such conveyance is made, is to be found by the jury. It is a question of fact, and cannot be made a question of law, whether the parties intended to deceive and defraud. These general principles are to be kept in view, in the examination of the case before us. The case comes on an exception to a particular part of the charge. It becomes, for that reason, necessary to inquire, whether that part is liable to the objections urged; whether it was called for by the evidence, and whether the plaintiff was entitled to such a charge, as he requested. Several expressions of the witnesses have been much commented on in the argument, which were designed to give a coloring to the transaction, and were, undoubtedly, urged to the jury, for that purpose, but they cannot be regarded on the question before us, which is wholly a question of law.

It appears that the testimony, on the part of the defendants, tended to show, that the purchase made by them was for a full consideration, and was intended as an absolute sale and purchase of the property in question.

The testimony, on the part of the plaintiff, tended to show a transaction of a different character, i. e. a conveyance on a secret trust, which, though absolute in its form, was not designed as such between the parties. Hence, the attention of the Court was directed to these two views of the case, as urged by the parties.

In either view, the intention of the parties, at the time of making the conveyance, and the character and tendency of the conveyance, as then understood by them, became important subjects of inquiry before the jury.

Chittenden,
January,
1838.
Brooks
v.
Clayes &
Morse.

We do not perceive any objections to the charge of the Court, if the jury believed from the evidence, that the sale and purchase were absolute, and made in good faith. It is in rela- tion to the other view of the case, taken by the counsel for the plaintiff, that the Court erred, if at all. If a trust was intended between the parties, it may be remarked, that if it was such as the law allows, although it is not expressed in the deed, the conveyance is not, on that account, to be considered fraudu- lent. Whether it would have been better if the law had been settled otherwise, is not for us to inquire. The several cases which have been decided in this Court, of *Spaulding* v. *Austin,* 2 Vt. R. 55. *Gibson* v. *Seymour,* 3 Vt. R. 565, and *Williams & Putnam* v. *Parish & Orcutt,* decided in Or- ange county in 1831, have established this principle, that a conveyance, absolute in its form, though intended in trust, is not, *per se,* fraudulent, although taking a conveyance in that form, and not expressing the trust in the deed, may afford strong evidence of a fraudulent intent. And it will result from this principle, that the decision in *Gould* v. *Ward,* 4 Pick. 104, must be recognized, viz. that an agreement on the part of the purchaser, to conceal the fact of his having pur- chased, is only evidence of fraud, but is not in itself a fraud. The jury were, therefore, very properly directed to inquire as to the intention of the parties, at the time of making the contract, and its character and tendency, as then understood by them. It has, however, been strenuously urged as an ob- jection to the charge, that the jury were instructed that the fraud must consist in securing the property to Irish, to the *ultimate* exclusion of his creditors. We can discover no- thing improper in this direction. A fraudulent conveyance is, when the intent of the parties is to cheat or defraud some third person, and when a benefit is designed for the grantor. It usually enters into the definition, and idea of a fraud, that there is a secret trust, for the benefit of the person making the conveyance.

Now, if there is a trust, for the benefit of the person ma- king the conveyance, and the object and intent are to secure the whole amount of the property conveyed, to satisfy the rights of the creditors, although such conveyance may be inoperative, to effect the purpose intended, and may be

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

void, as against creditors, yet, it cannot be said that the parties to the conveyance are guilty criminally, and liable to the penalty of the statute, when they design the benefit, and not the injury of the creditors. Some of the creditors may be delayed, some one may be prevented from appropriating the whole ostensible property of his debtor, to his exclusive benefit. The object and intent of every valid assignment is for the ultimate benefit of the creditors, and yet, in its immediate effect, it delays or hinders some of them, and places the property of the assignor in such a situation, that it cannot be taken by execution or attachment. Such an assignment has, however, been upheld in our own Courts, in the Courts of the United States, and in those of Great Britain; and not only upheld, but declared to be an " act of duty, rather than of fraud," when no purpose of fraud is proved, and to arise "out of the moral duty, attached to his character as debtor, to make the fund available, for the whole body of creditors." *Pickstock* v. *Lyster*, 3 M. & S. 375. We are fully satisfied with the doctrine, recognized by the County Court in their charge, that, if the parties intended to have the property disposed of, to the best advantage, and the avails appropriated as fast as secured, in payment of the honest debts of Irish, and that nothing was reserved to him, until his creditors were first satisfied, they were not guilty of the offence against the statute, notwithstanding they may have intended to prevent attachments, and a consequent sacrifice of the property, even although the conveyance itself might have been inoperative.

The counsel for the plaintiff have assumed the position that every creditor has a right to attach the property of his debtor, and this right cannot be disturbed without danger. It is true, that every creditor has a right to attach any property of his debtor, which such debtor may own, or be possessed of, at the time of the service of the attachment, and he has the same right to arrest his body. He may levy an execution on the body or property of his debtor. Neither of these are inconsistent with the right, which every one has, of disposing of his property to the best advantage, or of purchasing of others, when no design is entertained to defraud the creditors. The argument seems to be based on the supposition, that the creditors of every man in debt may claim that his

CHITTENDEN,
January,
1838.

Brooks
v.
Clayes &
Morse.

property should always remain subject to attachment and execution, and every conveyance, even though made for the purpose of raising money to pay the debt is void, because it may prevent the attachment or execution. The soundness of the argument is not perceived, inasmuch as it would tend to prevent all transfers of property, and greatly embarrass all the transactions of business. Moreover, I apprehend that the word *right* in the statute was intended as synonymous with debt or duty.

It is complained of, that the judge told the jury, the testimony of Irish did not prove a case under the statute. Although this does not appear from the bill of exceptions, it may be worthy of consideration.

On the views already presented, the testimony of Irish, if believed, would not tend to prove a case under the statute, although it may show that the defendants conducted improperly, both before the conveyance, to induce him to make it, and afterwards, in the management and disposition of the property conveyed. He discards every dishonest motive in himself, describes himself as having no intent to injure his creditors, as wholly surprised, and remonstrating when they made the general sweep of his property, and as indignant when Clayes, some days after the conveyance, said they must frighten the creditors, and buy up the debts at a discount. This testimony tended to show, that the intentions of Irish were honest, and the conveyance made with a view to carry into effect those intentions, and to aid, and not defraud the creditors.

It only remains to examine the requests made by the plaintiff's counsel; and of each of them it may be remarked, that they are not founded on the supposition, that the intent of the parties was dishonest, and if all the facts were found, which are supposed to have been proved, still, if this intent was wanting, the penalty of the statute was not incurred. This, alone, would be sufficient to justify the Court in neglecting to notice them in their charge. But further, the judge, in his charge to the jury, is not under obligations to answer requests there made, upon a hypothetical case. Such requests are calculated to mislead, and to withdraw the attention of the jury from the subject, actually in controversy. The law, and all the law upon the subject, which is required to enable the jury to come to a correct determination, must

be decided, or it will be error; but the parties cannot claim to have abstract questions of law decided, on a supposed case, which may or may not be warranted by the testimony. Every question of law, arising on the testimony as presented, was decided, and decided correctly in this case, and the judge was under no obligation to answer the particular requests enumerated, either in the affirmative or negative.

· On the whole, we think the charge of the judge was correct, and such as he ought to have given, calculated to direct the attention of the jury to the question in issue; to assist them in arriving at a correct conclusion, and to exclude all improper and extraneous considerations, in a case where their feelings might have led them into a wrong path, and improperly influenced their verdict.

The question, as to the intention of the parties, was submitted to the jury, and they must have found from the evidence that no corrupt motive influenced the defendants;—that they either made a fair purchase, for a valuable consideration, or undertook a trust, laudable and honest, and with no design to injure or defraud the creditors of Irish.

The judgment of the County Court is, therefore, affirmed.

COLLAMER. J.—Dissenting.