ELL BARNUM, *qui tam*, *v.* AZRO F. HACKETT.

*Qui tam actions for fraudulent conveyances and judgments. Evidence. Res Gesta. Declarations.*

The defendant in a *qui tam* action for the penalty for taking a fraudulent judgment, was enquired of, six months after the judgment was taken, by the attorney of one of the creditors who claimed to have been defrauded, what his claim was upon which he had taken judgment. He replied that he could not tell, but that all the minutes were left in the files of the justice who rendered the judgment. The attorney immediately examined the justice's files, but could find no such minutes. *Held*, that these facts were not admissible in evidence against the defendant.

*Held*, also, that the subsequent declarations of one of the parties who confessed the judgment, but who was not a party to the present action, were not admissible to prove that his intent in confessing the judgment was fraudulent.

Such declarations, though made, as the party making them said at the time, while he was on his way to get his share of the money realized from the sale of his property upon the judgment obtained against him by the defendant, are not admissible in evidence as part of the *res gesta*. The *res gesta* consisted of an antecedent transaction, the confessing and taking the judgment.

In a *qui tam* action against the creditor in a fraudulent judgment, or the grantee in a fraudulent conveyance, for the statutory penalty, it is necessary that the intent of *both* parties to the transaction should be ultimately to defraud creditors. A design to hinder or delay them merely for a time is not within the statute.

The case of *Brooks* v. *Clayes et al.*, 10 Vt. 37, approved and reaffirmed.

But if either party to such mutually fraudulent conveyance or judgment consists of more than one person, those who participate in the fraudulent intent are not relieved from liability under the statute by the fact that all of such persons are not guilty of a criminal design.

In a *qui tam* action for the statutory penalty brought against the creditor in an alleged fraudulent judgment, the plaintiff called, as a witness, one of the firm who were the debtors in such judgment, who testified, among other things, that his purpose in confessing the judgment was not to defraud their creditors, and that his partner's motive was the same as his. The plaintiff introduced other testimony tending to contradict this statement. *Held*, that the statement of the witness as to his and his partner's intent was not as matter of law conclusive, but that the plaintiff was entitled to have the cause submitted to the jury.

Barnum *v.* Hackett.

This was an action to recover the penalty given by the statute for being party to certain fraudulent suits and judgments in favor of the defendant against one Merchant and one Fiske, who were partners in the business of peddling. Plea the general issue, and trial by jury at the April Term, 1861, PIERPOINT, J., presiding.

The plaintiff introduced in evidence a certain copy of a writ in favor of the defendant against Merchant & Fiske, dated January 4th, 1860, together with the officer's return thereon, showing the attachment of all their property, and of the record of two judgments rendered by the confession of said Merchant & Fiske in favor of this defendant before a justice of the peace, one of said judgments being rendered on the 11th day of January, 1860, for the sum of $967.07 damages, and $15.96 costs, and the other on the 16th day of January, 1860, for $445.86 damages, and $15.96 costs, and both judgments purporting to be founded on the cause of action set up in the writ.

The plaintiff then introduced John A. Child, Esq., as a witness, who testified that, being employed by creditors of Merchant & Fiske, he called on Hackett at his house, in Westford, on the 2nd of June, 1860, and inquired of him what his claim against Merchant & Fiske was, and that the defendant told the witness he could not give him a statement of it, that all the minutes and evidences of the debt were left in the files of the justice.

The plaintiff then offered to show, by the witness. that, on going to the justice's files he found no minutes nor evidences of debt there. To this the defendant objected, and the evidence was excluded by the court, to which the plaintiff excepted.

The witness then proceeded to state that he found, at the justice's, the original writ, which he produced, as also an original execution, dated January 16th, 1860, issued on the judgment of $445.86, and the return of the officer upon it, showing the sale of the property of Merchant & Fiske attached on the writ; that the minute of the second confession of judgment above referred to was pasted over the minute of the first so as to cover it up on the back of the original writ, and that he, the witness. removed it in presence of the justice.

Child further testified that he was acting for one Skinner, a creditor of Merchant & Fiske, but that he could not say that he informed the defendant that he was acting for any of their creditors.

The plaintiff then introduced as a witness Addison Fiske, who stated that he was one of the firm of Merchant & Fiske; that he went into partnership with Henry E. Merchant on the 5th or 7th October, 1859; that there were written articles of partnership drawn up by the defendant; that, at the time of the formation of the partnership he had goods in his cart, a horse and a peddle cart; that the value of the goods he had on hand was $217.16, according to an invoice made at the time, which was made partly by the defendant and partly by himself and Merchant, and that the making of the partnership agreement and the invoicing of his goods referred to were done at the house of the defendant, and that this was about three weeks before he went to peddling goods; that when he and Merchant commenced peddling, in pursuance of their partnership agreement, they reckoned up the amount of their goods and found they had about $1000 worth of property, besides their horses, wagons, &c.; that the witness peddled but seven days, and that the entire amount of the sales of himself and Merchant, from the time they commenced peddling up to the time of the commencement of the defendant's suit (January 4th, 1860) against them, was not more than $125; that, at the time of the confession of the judgments referred to, he and Merchant had over $800 worth of goods, and besides, he, the witness, had a horse, harness and peddle cart. The witness also stated that, at the time, they were owing the plaintiff about $200, and to one Skinner, of Montpelier, about $600; that the first he ever heard of the suit against him in favor of Hackett was on the 8th of January, 1860, when he went to the defendant's; that Merchant was there, and while he was there Merchant took him out and told him that Hackett had attached their goods; that he, the witness, asked what for? and Merchant replied that he had heard that Barnum was going to attach the goods, and that he, Merchant, had procured the defendant to attach them to keep the plaintiff from doing so, and further told the witness that the defendant had attached all the

goods that were there; that Hackett was going to make up an account against them, and was going the next day to Hydepark to attach what goods there were there; that the witness and Merchant then went in and saw the defendant; that the defendant told them he had heard Barnum was going to attach and had sent one of his clerks over to inquire; that Barnum was a tricky man, and always in such games as that; that the defendant said he would sue them and attach their goods, and help them all he could; that they could confess judgment, have the goods sold and he would bid them off, and let them have them back to sell to pay their debts; that the witness told the defendant and Merchant that he wanted to fix it so that Barnum and Skinner could get their pay; that he, the witness, did not want either Barnum or Skinner to get all the goods, and that he did not want to be sued by either; that the defendant then said he could fix that so it would be all right; that he would make up a book account against them, sue and attach their goods; that they could confess judgment on that account and have the goods posted and sold; that this conversation was in Hackett's parlor; that he said he would bid off the goods and let them go back into their possession, and they could sell them and pay their debts; that there was talk about Merchant's stopping peddling, and his and the witness dissolving partnership; that the defendant told the witness he would send the goods to him, at Hydepark, and let him sell them; that, at that time, a part of the goods were at the house of the defendant, in Westford, and part at North Hydepark, in a store; that the defendant said he would send the goods to the witness after they were sold at sheriff's sale by the officer.

The witness also testified that three notes were executed at that time; that he wrote one, Merchant one, and the defendant the other; that these notes were signed by the partners, Merchant and Fiske, and made payable to the defendant, and delivered to him at that time; that it was talked between the three that it was best to have the notes written by different persons; that the notes bore different dates, and all amounted to about $700, and were written for different sums each; that it was talked that it was best to have dates and amounts different

because they would look better, and look less like fraud ; that said notes were given for no debt, but the defendant said he was afraid the account would not be large enough to cover all the goods ; that at that time, nothing was said about any debts being due from them to the defendant, but the defendant said he should not use the notes except to save the goods from Barnum ; that nothing was said about the defendant's account except that it was not large enough to cover all the goods ; that no account was shown them, but the defendant said he could make up a book account.

The witness also testified that he did not consider that Merchant & Fiske were owing the defendant any account at that time ; that it was talked that they could go to Mr. Soule's, a lawyer, (in Fairfax,) and have a confession drawn up, and then go before the justice of the peace and confess judgment for the notes and book account ; that this conversation was in the defendant's house, and the previous conversation between the witness and Merchant was had in the piazza of the defendant's house, and was reported to the defendant when they went in.

The witness also testified that on the next day (January 9th,) the defendant and the officer went to Hydepark to attach the goods there ; that the witness went there in the afternoon of the same day ; that while there the defendant stated to one Ordway that he and the witness understood it, (the attachment,) as all right ; that on the next day the witness went back to Westford in company with the defendant and the officer, and on the day following, the defendant, witness, Merchant and the officer, all went to Soule's in company ; that Soule then drew up a minute of a confession of judgment, at the defendant's request, on the notes and the book account, and the witness identified the paper testified to by Mr. Child, (the first confession,) as the one which was drawn up at Soule's ; that they then went to the justice of the peace, and the witness and Merchant confessed to the judgment, as drawn up by Soule, in Hackett's presence, and thence returned to the defendant's house and staid there over night. The witness also stated that the justice, Whipple, signed a blank execution which he gave them to carry to Essex, and have filled

6

out, as he did not know how to fill it out; that the witness, on the day following, returned to Hydepark and remained there till the next day, when the defendant's son came for him to return to Westford, and he returned to Westford on the day following; that on his return to Hackett's, the defendant told the witness the notes would show fraud, and they would make fraud out of it, and it would be a state prison offence for all of them; that the defendant said he could give up the notes and they could confess judgment again on the book account, and that would hold the goods; that the witness and Merchant went with the defendant, and at his request, to Essex, in company with the same justice of the peace, and confessed judgment again on book account before justice Whipple; that one Nichols was there and drew up the confession; that the witness heard the defendant request Nichols to do it; that this confession was on the defendant's book account, but that the witness did not see it then, but did see a part of the account at Soule's when they first went there; that he has never seen the account since that time and did not suppose that they owed the defendant anything, unless for board, which could not exceed $25.00; that the property was sold on execution by the officer; that the goods sold were Merchant & Fiske's goods, and that the plaintiff's debt had not been paid at the time of said confession and sale.

On cross-examination, the witness stated that he did not intend to defraud Barnum or Skinner, but meant to provide for the payment of their debts, and Merchant expressed the same idea; it was two days after confession that the defendant said the notes would not answer; that the defendant afterwards gave the notes up to the witness, and he burnt them; that Nichols asked why they wanted to reduce the amount of the confession, and the defendant replied that they had paid up the notes; that neither the witness nor Merchant made that statement, and did not inquire if it was the true amount of the account; that Nichols asked if they would confess judgment on the account, and they did; the witness did not know the amount, and did not see the book.

The plaintiff then introduced one Asa Ordway, who testified

that the defendant, when at Hydepark to attach the goods, told him that he and Fiske had an understanding about it, and there would be no trouble.

The plaintiff next introduced one J. L. Crocker, who testified that he was the owner of the store in Hydepark, where part of the goods of Merchant & Fiske were kept previous to the attachment ; that the witness had some goods in the same store, and was shut out by the defendant and the officer ; that on the witness becoming somewhat excited, the defendant said to him there would be no trouble, as he and Fiske understood it ; that on the next morning he had a further conversation with the defendant, and the defendant again stated there would be no trouble, he was going to bid off the goods and put them back and let Fiske have them again.

Another witness, called by the plaintiff, testified that he was present at the defendant's at the time of the service of the writ in the present case, and that the defendant, on being informed by one of the plaintiff's counsel that the object of this suit was to bring things right between the defendant and Merchant & Fiske, and in reply to an inquiry made by the plaintiff's counsel as to the basis of the judgments aforesaid, stated that there was no fraud in obtaining the judgments, and that they were good and valid.

The plaintiff offered testimony to show that, shortly after the sale of the property on the execution, Merchant stated to the witness that the judgments were fraudulent, and that they were confessed, and the property of Merchant & Fiske taken and sold on the execution, in order to avoid the plaintiff's claims, and that this conversation was had while. Merchant was on his way to Hackett's for the purpose, as he said, of obtaining his, Merchant's, portion of the money realized from the sale of said property. This testimony was objected to by the defendant, and was excluded by the court, to which the plaintiff excepted.

The court ruled that the plaintiff's testimony had no tendency to sustain the action, and ordered a verdict for the defendant, to which the plaintiff excepted.

Barnum *v.* Hackett.

*J. French* and *E. R. Hard,* for the plaintiff.

*Daniel Roberts* and *George F. Edmunds,* for the defendant.

PECK, J.   This is a *qui tam* action to recover the penalty given by statute for taking certain fraudulent judgments by confession in favor of this defendant against Merchant & Fiske, with intent to defraud the creditors of the judgment debtors.   It comes here on exceptions taken by the plaintiff on trial before the jury.

The first exception is to the exclusion of certain facts offered to be shown by the plaintiff's witness, John A. Child.   The plaintiff having introduced copies of record of the judgments, introduced Child as a witness, who testified that being employed by creditors of Merchant & Fiske, he called on the defendant Hackett at his house in Westford on the 2nd day of June, 1860, (the judgments bearing date in January, 1860,) and enquired of him what his claim was ; that the defendant told the witness he could not give him a statement of it, that all the minutes and evidences of debt were left in the files of the justice.   He testified that he did not inform the defendant of his employment by creditors.   The plaintiff then offered to prove by the witness that on going to the justice files he found no minutes or evidences of debt there.   This the court excluded, and as we think, properly.   It is claimed to be admissible as tending to show that the defendant made a false statement in relation to his claim.   If it would be competent to show the statement false, the evidence offered was not sufficient to prove it so.   The statement was that the minutes and evidences of the debt were left in the files of the justice. The offer was simply to show that six months after the date of the judgments Child went to the justice files and did not find them, that is, the minutes and evidences of debt.   The defendant was not the keeper of the justice files nor responsible for the manner in which he kept his papers ; nor did Child enquire of the justice or make known to him his business, or even see him, at least nothing of the kind is embraced in the offer.   The papers may have been there and on enquiry of the justice Child might

perhaps have found them.    More clearly still does the evidence offered fail to show that the papers were not left there.    It is claimed to be admissible in analogy to the principle that when one refers another to a third person for information the declarations of such third person are evidence.    This principle is limited in its application to peculiar and special cases, if it can even properly apply to any case except where the information thus obtained was given for that purpose, and has been acted on. Before the plaintiff can claim any benefit under this rule he ought at least to show that Child made enquiry of the justice.    Nothing appears in this case to make the rule relied on applicable.

The next question is whether the court erred in excluding the declarations of Merchant tending to show his fraudulent intent in confessing the judgments.    The criminal intent of Merchant in confessing the judgment was a material fact in the case ; the only question is whether his declarations offered were competent to prove it.    Merchant is not a party to the suit, but is a party to the alleged fraudulent judgment.    The declarations were not made at the time of the confession of the judgment, but subsequently.    It is not competent for a party, who has made a conveyance, afterwards to make declarations to be used against the grantee to impeach its validity, even though such declarations relate to his motive in making the conveyance.    We can not see why the principle should not apply to a judgment as well as a conveyance.    As to declarations of this character made *before* the conveyance, the authorities are not uniform, but it is not material what the law is in such case.

But it is insisted the evidence is admissible upon the ground that it is a part of the *res gesta*.    Merchant made the declarations while on his way to Hackett's, as he (Merchant) said, to obtain his share of the money realized from the sales under the judgment in question.    To bring it within this principle we must treat the fact that he was going after the money as the *res gesta*. This is offered to be proved by his declarations.    Thus the *res gesta* is first proved by his declarations, and then the further declaration, as to his motive in confessing the judgment, is to be admitted on the ground that it is part of the *res gesta*.    This will not do.    The *res gesta* in this case is an antecedent act which

had already been completed, the confession of the judgment. The intent offered to be proved by the declarations had reference to his motive in doing that antecedent act. The declarations do not accompany the act and are not admissible on this ground. Had they accompanied the act of procuring the judgment, the argument would have been more plausible. There was no error in rejecting this evidence.

The next question is, whether the court erred in directing a verdict for the defendant. The court adhere to the decision in *Brooks* v. *Clayes* and *Morse*, 10 Vt. 37. So far as the questions involved in this case were there decided, that case must govern this. That was a case of a conveyance, but the principles there laid down are applicable also to judgments. In that case the action was brought against the grantee in the alleged fraudulent conveyance, and in this case the action is against the creditor in the alleged fraudulent judgments. The debt in that case and the debts in this case both stand in the same relation to the alleged fraudulent transaction. In neither of the cases is the action against the debtor whose creditors are attempted to be defrauded. In such case, in order to fix the penalty upon the defendant, it must be shown that the intent to defraud creditors existed in both parties to the conveyance or judgment at the time of the transaction, that is, at the time the conveyance was made or the judgment procured. The ground of the decision in *Brooks* v. *Clayes* and *Morse* is that a combination, concert or collusion between the parties to defraud the creditors, was necessary to a conviction, and that if the intent existed in the mind of the grantees only, the penalty is not incurred. The language of the court in that case is broad enough to warrant the conclusion from it, that in all cases it is necessary. But the rule that requires the criminal intent to exist in both parties, taken in its most comprehensive sense, does not require all the persons who are parties to participate in such corrupt intent. It may exist in both parties, the grantor and grantee, in the debtor and creditor in the alleged fraudulent judgment, without existing in all the persons that compose the party on one side or the other, if composed of two or more. That is not necessary. One of two partners might intentionally mislead the other one, and induce him

Barnum *v.* Hackett.

to believe they were justly indebted to the person to whom they gave the judgment or conveyance ; or one partner might, in the absence and without the knowledge of the other, procure a fictitious judgment or take a fraudulent conveyance to the firm, and we think even the strict construction applicable to this, as well as to other criminal statutes, does not require the rule to be extended so far as to shield all in such case because one is innocent. There may be such a combination or common criminal intent between grantor and grantee as to incur the penalty, notwithstanding there is a co-grantor or co-grantee who is innocent of the corrupt intent.

It is claimed that if one of the parties, that is, the grantor or grantee, has such intent ultimately to cheat and defraud creditors, and the other party has an intent only to delay creditors temporarily by preventing an attachment, it is sufficient. In such case the conveyance might be void, but the penalty would not necessarily be incurred because the conveyance was void. The principle that requires the corrupt intent in both parties means a criminal intent in both.

The only remaining question is whether the evidence on the part of the plaintiff entitled him to have the case submitted to the jury. If the testimony of Fiske as to his motive and the motive of Merchant in confessing the judgments, is true, the penalty in this case was not incurred, whatever Hackett's motive might have been. But the facts testified to by other witnesses have tendency to show the necessary fraudulent intent ; and Fiske's testimony to the contrary as to the motive was not as matter of law necessarily conclusive, notwithstanding he was introduced by the plaintiff. Fiske stood in such a relation to the transaction as might have induced him to put as favorable a construction on his conduct and motives as the truth would warrant. As to the motives of his partner, Merchant, it is clear that Fiske's testimony was not conclusive. The case, therefore, should have been submitted to the jury.

Judgment reversed and new trial granted.