ROBERT BEACH, 2d, *qui tam* v. OVETTE BOYNTON.

[DECIDED IN CHITTENDEN COUNTY, DEC. TERM, 1853.]

*Fraudulent Conveyance. Right of Surety for Grantor to Penalty under the Statute.*

A surety for the grantor, in a fraudulent conveyance, is to be regarded as the party aggrieved by such conveyance, from the date of his suretyship, and before he pays any portion of the debt, and his right to recover the penalty given to the party aggrieved is perfected, by paying the debt, and dates from the time of his becoming surety.

QUI TAM action, founded upon Chap. 104, § 23 and 24 of the Comp. Stat. of this state, being Chap. 95 § 19 and 20 of the Revised Stat.

Plea, not guilty, and trial by jury.

The plaintiff, to support the issue on his part, produced in evidence a certified copy of a deed, dated June 14, 1848, from Jedediah Boynton, to the defendant of several pieces of land situated in Hinesburgh, with the mill and machinery thereon, being the same described in plaintiff's declaration.   Also, a certified copy of the record of a judgment, by confession, in favor of the defendant against said Jedediah Boynton, before John Wheelock, a justice of the peace, made on the 17th day of June, 1848, for the sum of $878, damages, and twenty-five cents, costs, which judgment was also described in the plaintiff's declaration.

The plaintiff also offered testimony tending to prove, that the said Jedediah Boynton, and one Bial and Henry Boynton, were on the 17th day of June, 1848, and for many years previous thereto had been, partners engaged in the business of manufacturing, at said Hinesburgh, under the name and style of B. & H. Boynton ; that on or about the first day of March, 1848, the plaintiff signed a note of that date payable four months from date to the Bank of Burlington, as surety for the said Jedediah, Bial and Henry Boynton ; that said note was discounted by said Bank, at the request and for the benefit of said firm of B. & H. Boynton, and the money paid to them, which note was outstanding and unpaid on the 17th day of June, 1848.

The plaintiff also introduced in evidence two drafts, one for $600, dated April 26, 1848, and one for the sum of $400, dated March 9, 1848, both drawn by B. & H. Boynton, upon one Ray Boynton, of the city of New York, payable to the order of Jedediah Boynton, and indorsed by Jedediah Boynton, and also by the plaintiff ; that said drafts were indorsed by the plaintiff, for the accommodation and as surety for the firm of B. & H. Boynton, and that they were discounted by the Farmers' & Mechanics' Bank, at the request and for the benefit of said firm, at or about the time of their respective dates, and that said drafts were on the 17th day of June, 1848, outstanding and unpaid.

Also evidence tending to prove, that when said drafts respectively became payable, they were duly presented to Ray Boynton, the drawee and payment thereof demanded ; that the same were not paid by the drawee, and were duly protested for non-payment, and legal notice thereof given to the plaintiff and the other indorsers ; and that the plaintiff was afterwards compelled to and did

pay both of said drafts to the said Farmers' & Mechanics' Bank, the holder of said drafts, and that said drafts had never been paid by any one to the plaintiff.

The plaintiff also proved, that said note when the same became payable or shortly after, was paid by him to said bank of Burlington, and that it had never been paid to him.

The plaintiff also introduced evidence tending to prove, that on or about the 17th day of June, 1841, the said firm of B. & H. Boynton, including the said Jedediah Boynton, failed and became bankrupt, owing at the time from eighty to one hundred thousand dollars, and that said firm has ever since continued bankrupt and insolvent, having never discharged any part of said indebtedness. The plaintiff also introduced a copy of a deed executed by Jedediah Boynton, to Ray Boynton, dated June 17, 1848, conveying all his, said Jedediah's real estate in said Hinesburgh; also certified copies of two judgments, by confession, before John Wheelock, a justice of the peace, on the 17th day of June, 1848; one in favor of Ray Boynton, and one in favor of Elliot & Boynton, both against Jedediah Boynton.

The plaintiff also proved, that Jedediah Boynton died on or about the 24th day of June, 1848, and before either of said drafts, or said note became payable; that his estate was represented insolvent in the probate court, for the district of Chittenden, and that an administrator and commissioners were appointed, that said commissioners held their sessions agreeably to law, and that said two drafts and note were presented, and by said commissioners duly allowed in favor of the plaintiff against the estate of Jedediah Boynton; and that said allowance was at the time of the trial of this cause still subsisting against said estate, no part having been paid.

The plaintiff's testimony tended to establish all the facts necessary to enable him to recover in this action, provided he had shown any right, debt, or duty existing on the part of Jedediah Boynton, or said firm of B. & H. Boynton, towards the plaintiff within the meaning of the statute.

The court,—PIERPOINT, J., presiding,—decided that the evidence did not prove the existence of any such right, debt, or duty, at the time of the alleged conveyance and confession, on the 17th day of June, 1848; and directed the jury to return a verdict for

the defendant.    To which  decision  and ruling  of the  court  the plaintiff excepted.

*E. J. Phelps, D. A. Smalley* and *L. E. Chittenden* for plaintiff.

We therefore insist that at the  time of  this  fraudulent convey-

I.  This statute does not  in terms require that the person whose right, debt or duty is  attempted to be avoided, shall be a *creditor.* The words are the right, debt or duty  of *any other person.*   It is not to be gathered from  this statute that the legislature intended to confine its benefits to a mere creditor.  *Twyne's case,* 2  Coke  82.

Are these words  right and duty then  to  have any  meaning at all ?   If the  judgment of the court below is  correct their meaning is synonymous with *debt,* and must be  limited to that signification. It cannot be said that  they refer to a  case  where the conveyance is made to avoid a  debt not due, for it is  equally a  debt whether due or not.

No meaning whatever can be  given to these  words unless they apply  to the  case at bar, and the court should give effect to every word in the statute.   Opinion of  the Justices, 22  Pick. 573.

II.  The  statute so far  as it relates to the  conveyance and the judgment is a purely *remedial* statute.   It was passed for the pur- pose of  giving to  the party  injured an  additional remedy for the collection  of  his debt and enforcing  his right  or duty.   So far, therefore, as it renders  such  conveyances or  judgments void, and so far as it relates to the persons at whose  instance they  may be declared void, it should receive  a liberal and  beneficial construc- tion.   *Brooks* v. *Clayes et al.,* 10 Vt. 37.    5 Com. Dig. 327 to 330. 2 Blackstone's Rep. 12, 26.    *Wilkinson* v. *Colbey,* 5  Burr. 26,94. *Smith* v. *Moffat,* 1 Barb. 65.    *Fairbanks* v. *Antrim,* 2 N. H. 105.

A different construction may properly enough be applied to that part of the statute which relates to the  interest of the  parties in making the conveyance, but the case shows, that on this point there was evidence which should have been submitted to the jury.

If then the statute is to receive a beneficial construction so far as it relates to the  party, at whose *instance* the conveyance may be declared fraudulent, a creditor  whose debt is  absolute, stands in precisely the same  relation to it, that the present plaintiff does, whose debt shortly after became absolute.   The  evil to be guard- ed against is in both cases precisely the same.

ance and judgment, Jedediah Boynton was owing such a *right* and *duty* to the plaintiff, as entitles him to maintain this action.

It may be said, however, that this statute has received a construction in *Brooks* v. *Clayes et al.*, such as the defendant here claims for it.

It is true that Judge WILLIAMS in that case says, he apprehends the word *right* is synonymous with *debt* and *duty*. This we are under no necessity of denying in this case.' But the point then before the court was simply this. It was claimed that the right to attach a debtor's property was a right within the meaning of the statute. This position was denied by the court and that is the full extent to which that decision goes. It does not at all affect our construction of the statute.

This statute makes the conveyance void, when made to avoid any debt, &c. This was clearly void as against the Bank, or the holders of these bills. It then gives a remedy to the party aggrieved, and a surety who is compelled to pay the debt is a party aggrieved within the statute.

*Geo. F. Edmunds* and *J. Maeck* for defendant.

I. Was the plaintiff "*the party aggrieved*" by the conveyance stated in the case; within the meaning of § 24 of the statute, so as to entitle him to sue for the penalty therein mentioned?

This action is in no sense remedial. The recovery of the penalty in no manner affects the rights or remedies under § 23 of the statute; it satisfies no debt; it discharges no right; it purges no fraud, &c. It simply punishes.

It must stand or fall, then, like a criminal prosecution, as it is in substance, upon a strict construction of the section on which it is founded. The liberal doctrines of equitable construction which have attached to remedies sought under § 23, and which the common law would have equally afforded, have no application to it. The party must bring his case clearly within the very words of the statute. *Hooker* v. *Wilkes*, 2 Strange 1127. *Daggett* v. *State*, 4 Conn. 60. *Leonard* v. *Bosworth*, 4 Conn. 421. *Valkenburgh* v. *Torrey*, 7 Cowen 252. *Wilder* v. *Winne*, 6 Cowen 284. *Brooks* v. *Clayes et al.*, 10 Vt. 37. *Mattocks* v. *Wheaton*, 10 Vt. 493.

XXVI          47

The penalty is incurred *at the time of the commission of the offense*, and the right to sue for it vests *then*.

The penalty in question vests in the person holding the debt, but then no longer depends upon the debt. It does not follow it upon assignment or negotiation; payment does not discharge it; the right to it resides and continues in the person in whom it first vested. *Forbes* v. *Davison*, 11 Vt. 660.

The question must be tried and decided as it stood at the time of the conveyance; and we confidently assert that no precedent can be found any where, which puts the right to the *penalty* upon any other footing.

Upon this principle were decided the cases of *Forbes et al.* v. *Davison, cited ante. Fox* v. *Hill*, 3 Conn. 320. *Aiken, qui tam* v. *Peach*, 22 Vt. 255. *Warren* v. *Piercy*, 22 Vt. 155.

The plain and obvious meaning of the word, right, in connection with " debt or duty " is a present cause of action for, or title to, the possession of a thing ; and its correlative is, "duty." Bouvier's Law Dic. Title, *Right. Brooks* v. *Clayes et al.*, 10 Vt. 37. *Sargeant* v. *Lealand*, 2 Vt. 277.

II. The cases cited by the counsel for the plaintiff do not effect our position.

They proceed upon the statute of Elizabeth, and those like it, which are more extensive than ours.

They were not actions for the *penalty* given by the statute, but purely remedial actions brought to set aside the conveyances in respect to the original debt, after the surety had paid and levied upon the property.

In such cases the most liberal and extended construction does and should obtain.

III. Even admitting the soundness of the case of *Howe* v. *Ward*, 4 Greenl. 195, and the other cases like it, they fall far short of supporting this action.

The construction and effect of § 23, 24, and the nature of the proceedings under them are entirely different.

In the first, the law from certain facts *implies* the interest necessary, to avoid the conveyance, &c., although it be in fact entirely *bona fide*. In the second, the *mala fides* must be established as a *fact*. Under the first, the creditor cannot interfere until he has obtained a judgment, and then only to satisfy his debt; under the second, his right to the property accrues at once.

By the first, the right to avoid the conveyance follows the debt, and if the debt is assigned, or into whose hands soever it may come, the right to avoid the conveyance continues with it; for the holder of the debt stands in the place of the creditor and is entitled to his remedies.

By the second, the right to the penalty remains in the first creditor and does not follow the debt.

No action would lie at common law for such a grievance even after payment. It is too remote a contingency. *Moody* v. *Burton*, 27 Maine 427. *Lamb* v. *Stone*, 11 Pick. 527.

Finally, no action of this kind has ever been brought or supported, either under the statute of Elizabeth, or any other; no precedent of this kind exists; almost three hundred years have passed since the statute of Elizabeth, and we submit, if the right of action had existed in such a case as this, it would have been discovered ere now.

The opinion of the court was delivered by

REDFIELD, Ch. J. The only question made in the present case is, whether the plaintiff is so related to the parties to the alleged fraudulent conveyance, as to be entitled to sue for the penalty. The plaintiff was at the time of the conveyance a surety merely, having never paid any portion of the debt, which he subsequently did pay, and had an allowance against the estate of the grantor in the conveyance. The question is, whether the plaintiff can be considered the party aggrieved, within the meaning of the statute?

It is certain that, for many purposes, the plaintiff was not a creditor, at the date of the conveyance. It is not claimed, nor is it necessary perhaps to show, that he was a creditor, in every sense, and to every purpose. He could not sue the principal, but in equity he might take proceedings, after the debt becomes due, to compel the creditor to assign the debt to him, on payment of the amount due, and thus enable himself to take the property of the debtor.

And it is not seriously urged, that he could not avoid the conveyance made by the debtor, after he became surety, and before he assumed the debt. It would be strange if this were not so. For it is admitted, as it must be, that he was a creditor after assuming the debt. But it is urged, that he is to be treated as a cred-

itor subsequent to the conveyance, and only from the date of the actual assumption of the debt. Now it is very obvious that his rights, and the duty owing to him, are altogether of the nature of a prior creditor.

1. The prior creditor is allowed to avoid the conveyances because it deprives him of property, to which he does look, or has the right to look, for his indemnity. 2. The prior creditor may avoid a subsequent fraudulent conveyance, because *it is supposed* to deprive him of a means of indemnity, which may be presumed to have formed the consideration of his undertaking. 3. The subsequent creditor cannot avoid the conveyance, chiefly because he is not deprived, either of the consideration of his undertaking, or of his indemnity.

Now, in both these respects, the surety is more within the requisites of a prior creditor, than even the primary creditor was, who may be supposed, as is commonly the fact, to look more to the surety for his indemnity, than to the property of the primary debtor. And under these circumstances, if these debts were the only ones owing, (and they may fairly be viewed in that light, for the present purpose,) the surety is, in equity, and within the evil intended to be remedied, by the statute, far more obviously than the principal creditor, the party aggrieved. He is, if responsible, the only party aggrieved in the general and popular sense. And the grantor, in a case like that supposed, must be understood to have intended the necessary result of his conduct, *i. e.*, to defraud the plaintiff, by depriving him of all redress or indemnity for his undertaking.

But I should consider, that the plaintiff, to prevail, must not only show himself within the equity of the statute, and the evil intended to be remedied, but also within the fair imp ort of the words of the statute, construed with reference to their subject-matter.

This statute must undoubtedly be regarded as a penal statute, so far as the present action is concerned, for any recovery had will be strictly a penalty. But as the statute is expressed, it seems to me impossible to say, that one who may avoid the conveyance under the twenty-third section, is not the party aggrieved under the twenty-fourth section. For the twenty-fourth section refers in express terms to the twenty-third section, for the definition of the

Beach *v.* Boynton.

"party aggrieved." The party aggrieved must be the party, and all the parties, whose right, debt or duty is attempted to be avoided.

And when it is said the plaintiff may avoid this conveyance possibly, but that he comes in to do so, under the common law, and not under the statute, I must say, that I do not feel any sound basis for such an argument to rest upon. If a statute exists upon the subject, it must be conceded that it was intended to supersede the common law, and to govern future cases. That being so, a case not within the statute might fairly be presumed to have been purposely omitted, and if so, virtually excluded from the benefit of the statute, and by consequence, of the common law, in regard to avoiding the conveyance, even by levying upon the property. And especially should this be so regarded, in a case coming clearly within the range of the statute. Now the statute may fairly be considered as intending to embrace all rights, coming under the general denomination of contracts. The word ".debt" is undoubtedly the controlling word in defining the "party aggrieved." But very obviously the words "right and duty" are intended to extend the definition beyond the strict import of the word "debt," else they would scarcely have been used. That statute was drawn up, and has passed through the hands of men who may fairly be presumed not to multiply words for mere euphony; some purpose was doubtless intended to be served by them. But "right and duty" are no doubt limited to such rights and duties as are of the nature of debts, such as exist *ex contractu.* But even with that limitation, (and no other occurs to me, as coming fairly within the probable purport of the statute,) they are far more extensive in their signification than "debt" in its strict sense.

And although no right existed on the part of the plaintiff, or any duty on the part of Boynton, which could form the basis of an action at the time of the conveyance, yet that is not indispensable. If it were, the right or duty must not only exist, but be perfect, and *due* presently. It may doubtless be, not only due, *in futuro,* which no one denies, but it may be contingent, to some extent, like a covenant against incumbrances, or for quiet enjoyment, which could scarcely be said to import no duty, on the one part, or right on the other, and are clearly of the nature of a debt, so far as to be matters of contract, and are still as really contingent, as that of the right of a surety to indemnification. And if the surety had

taken a bond of indemnity, no one could question his claim would be strictly analogous to that of the covenants of warranty in a deed. And still, I think, it would scarcely be claimed, that, in that case, the surety might be regarded as the party aggrieved by the conveyance, and not in a case like the present. Such a difference, in result, could scarcely be predicated upon a difference as to the form of the undertaking. There is as really a right to be indemnified on the part of the surety, and a duty on the part of the principal to indemnify, as if it were in the form of a bond. And it has been held, that if the surety has been really damnified, before he brings suit, and subsequently pays a part of the debt, or the whole, while the suit is pending, such payment, subsequent to the bringing of the suit, may be recovered in the action. The truth is, that in popular language, and within the evil intended to be remedied by this statute, the surety has a right and the principal owes him a duty, which is of the nature of a debt, to save him harmless. And if necessary, for any purpose, to show the date of his claim, he may declare upon this implied duty, or promise, to save harmless, which is certainly recognized in the elementary writers upon this subject, and in most of the cases which speak upon this part of the subject. Ch. J. MELLEN, fully indorses this view in *Howe* v. *Ward,* 4 Greenl. 195 ; and that case seems fully in point to govern the present in all its facts. And the case of *Carlisle* v. *Rich,* 8 N. H. 44, and the case of *Thompson* v. *Thompson,* 19 Maine 244, being bonds for official faithfulness, and the conveyance before any fixed liability of the sureties, seem in principle to control the present, and the courts, in both these cases, very fully recognize a surety as the creditor of his principal, from the date of his suretyship. So also does the case of *Sargent* v. *Salmond,* 27 Maine 539. And so does *Jackson* v. *Seward,* 5 Cow. 67 ; and the reversal of the case does not touch this question. The assertion of the court in *Brooks* v. *Clayes et al.,* 10 Vt. 37, that a party might set aside the contract, in many cases, where he could not recover the penalty, is no doubt true in many respects. But that, as our statute is expressed, both subjects being combined, by express reference, how it can be true, that in a case of clear proof, one may be so situated, as to be entitled to avoid the conveyance, and not sue for the penalty, I do not comprehend.

The twenty-third section of our statute says that " only the party, whose right, debt, or duty is attempted to be avoided, may avoid the conveyance," and the twenty-fourth section, that " all the parties to such fraudulent and deceitful conveyance, &c. shall forfeit and pay a penalty," &c., which 'forfeiture shall be equally divided between the party aggrieved, *i. e.*, whose right, debt, or duty is attempted to be avoided ; referring *in totidem verbis*, to the definition of the person who may avoid the contract, thus making them identical, so far as language can do it. So that to say, in this case, that the plaintiff is entitled, under the statute, to avoid the conveyance, and not to sue for the penalty, is a mere arbitrary evasion of the manifest import of the statute.

Bankrupt cases prove nothing either way. Sureties were formerly not allowed to prove their claim as creditors, either in this country or in England. But in the late bankrupt law of the United States, sureties were allowed to prove, and were, of course, barred by the bankrupt's discharge; as wa sheld in the case carried up to the United States Supreme Court, from the decision of this court, *Wells* v. *Mace*, 17 Vt. 503, which was reversed upon that ground alone. And the late English bankrupt laws are the same. And so against insolvent estates, sureties may now present their claims. But these remote analogies prove but little either way. There are, no doubt, some difficulties in the way of treating the plaintiff, as the party aggrieved, from the date of his suretyship, but far more in denying it. If we deny it, we must, to be consistent also deny his right to avoid the conveyance. In allowing it, we meet the obvious intent of the statute, in both respects, and certainly do no violence to its words ; while, in the other case, we defeat both the sense and the words, and the obvious design of the statute.

The first impression of the question in this case is very striking —that to deny a surety the right to come in as a creditor from the date of his suretyship, is a manifest perversion of his true position ; and the more I have examined the subject, the more I have felt convinced, that the impediments in the way of his being so treated, are rather technical than substantial ; that they are too refined for common apprehension, or general acceptance. Such a construction of the statute would be, in my judgment, but to invite additional legislation, in order to reach what is now very satisfactorily expressed in the statute.

It can scarcely be claimed, I think, fairly, that the difference in terms between our statute and the statutes in Maine and New Hampshire, justify any difference of construction upon the point now under consideration.   Our statute upon this very point is more comprehensive than in some of the states, where these decisions, treating a surety, as the party entitled to redress, as a creditor from the date of his suretyship, have been made, and no more perhaps than others, but they are all very similar, more so than the decisions in regard to them, very probably.

When Ch. J. WILLIAMS says, in *Brooks* v. *Clayes et al.*, 10 Vt. 54, " I apprehend that the word *right*, is synonymous with debt or duty ;" he is arguing against its extension to mean, a mere right to attach his debtor's property.   And in that sense we fully concur. It most undoubtedly is confined to rights, which are of the nature of debts ; but was, very probably, inserted to reach cases analogous to the present, where an inchoate right or duty existed, but which had not become ripened or perfected into a debt.   And a statute without some such provision, all must admit, would be sadly defective.   The fact that it was inserted shows the sagacity of the framers.   And still the statute is so drawn as to exclude rights in the nature of torts, as was held in regard to the Connecticut statute, in the cases cited by the defendant's counsel.   But within the range of matters of contract, I do not perceive but that our statute is as extensive as that of the 13th Elizabeth, or most of the American statutes upon the subject.   It seems to have been the purpose of the Connecticut statute, and of that of this state, following in the same path, (and far more so than those of many of the states where the doctrine has been held which we now hold, as in New Hampshire and Maine, where, I think, the controlling word is " creditor,") to exclude rights of the nature of torts, or not to include them.   And if we construe § 24 without reference to § 23, our statute giving the penalty to any party aggrieved, may be made as extensive as the New York statute.  The party aggrieved, with no limitation, is as extensive as creditor, or any other person, but most undoubtedly, our statute intends any person aggrieved, by having his right, debt or duty attempted to be defeated.   In the original draft of our statute upon this subject and until the revision of 1839, the right to avoid and to recover the penalty were both given, in one section and in terms, to the

same persons, as at present. As we are not able to see any reason why a surety should not be treated as a creditor, or as one liable to be aggrieved, by his principal conveying away his property, to defeat the "rights" of the surety, and evade the "duty" of the principal, in the implied obligation to save the surety harmless, the judgment in this case is reversed, and the case remanded for trial.