FRANK J. GREEN *v.* HATTIE V. ADAMS (formerly
SEAVER), GEO. W. FOLSOM, MARY AND
LEVI W. SEAVER.

[IN CHANCERY.]

*Bill of Interpleader. Divorce. Alimony. Fraudulent Con-
veyance. Lien. Trustee. R. L. s. 4155.*

1.  When a husband has committed and confessed a crime, for which if he should be
    punished by confinement in the state prison, according to law his wife would
    have a good cause of divorce therefor, a transfer by him of his personal prop-
    erty to a trustee for the purpose of defrauding his wife of alimony, in case
    she should obtain a divorce, is void under the statute against fraudulent con-
    veyances,—R. L. s. 4155.

2.  S. had committed the crime of arson and confessed it, and expecting to be con-
    fined in the state prison and that his wife would obtain a divorce, he trans-
    ferred, with the intent of defrauding her of her right to alimony, his personal
    property to G. in trust for his wife so long as she remained such, but no
    longer, and in case she procured a divorce, for his mother and brother. S.
    was imprisoned and a divorce was granted to his wife therefor; all the funds
    were decreed by the court to her as alimony and notice thereof given to the
    trustee; thereupon the defendant F. attached the funds by trustee process,
    bringing his action on a judgment obtained against S. for burning his prop-
    erty. On a bill of interpleader brought by the trustee; *Held*, (*a*) that the
    transfer was void under the statute against fraudulent conveyances, and that
    the personal property vested in and belonged to the wife by virtue of the
    decree assigning it to her as alimony; (*b*) and F.'s claim being founded in
    tort is not within the statute,—as that relates only to rights and duties arising
    out of contracts.

3.  The rights of the wife in respect to the property was not affected by the convey-
    ance; and she would hold the *money* in the hands of the orator even if F.'s
    claim had been within the statute; for the decree of alimony and the notifica-
    tion perfected her right to it before the service of the trustee writ.

BILL of interpleader. Heard on the pleadings and a special
master's report, March Term, 1887, VEAZEY, Chancellor. The

whole fund in controversy, except the note signed by Levi W. Seaver, was decreed to the defendant Hattie V. Adams, and the said Levi W. Seaver note was decreed to the defendant Folsom. The case is stated in the opinion.

*J. A. Wing*, for the defendant Folsom.

The wife's lien for alimony is on the husband's real estate and stock in corporations, but not on his personal estate, and he can dispose of this as he pleases, without her consent. In the case of *Foster* v. *Foster*, 56 Vt. 540, no question was made as to personalty. The husband can give away his personal property. Bigelow Fr. 96; *Holmes* v. *Holmes*, 3 Paige, 363. He can convey it away and the wife has no remedy. *Lightfoot* v. *Calgier*, 5 Munf. (Va.) 81; *Cameron* v. *Cameron*, 10 Smedes & M. 394; *Hayes* v. *Henry*, 1 Md. Ch. 337. He can give away till his wife, his children and himself are penniless. *Pringle* v. *Pringle*, 59 Pa. St. 281; 1 Bl. Com. 447; 2 Kent Com. 440. No suit was pending for a divorce, and her husband had not then done anything which was a cause of divorce, that depended on a contingency. A clause in a will giving property to a widow, but in case she marries, to another, is legal. *McCloskey* v. *Gleason*, 56 Vt. 264. The trust was valid as to the wife, but void as to the creditors, of which Folsom was one. *Jones* v. *Spear*, 21 Vt. 426; *Cross* v. *Sickles*, 15 Vt. 252; *Church* v. *Chapin*, 35 Vt. 223; *Dewey* v. *Long*, 25 Vt. 564; *Woodward* v. *Wyman*, 53 Vt. 645; *Prout* v. *Vaughn*, 52 Vt. 451. It is clear that the trust was void as to him, if he comes within the statute. Cases, *supra*. A claimant in a bastardy suit is a creditor within the statute. *Damon* v. *Bryant*, 2 Pick. 411. So is one who has been assaulted a creditor in respect to his damages. *Slater* v. *Sherman*, 5 Bush (Ky.) 206.

A conveyance pending an action for tort is void. *Ford* v. *Jackson*, 14 N. Y. 563; *Wilcox* v. *Fitch*, 20 Johns. 472. The defendant Folsom can avoid the trust. *Miller* v. *Dayton*, 47 Iowa, 312. One having a claim for a tort is a creditor. *Weir*

v. *Day*, 57 Iowa, 84; *Logan v. Seatten*, 59 Md. 72. By the common law, the husband owns the personal property absolutely. The wife has only a lien for dower in the realty. *Parks* v. *Cushman*, 9 Vt. 320; R. L. ss. 2215, 2228. This has not been indirectly changed by the divorce law. R. L. ss. 2378–9. The court can enjoin the husband in a divorce case from disposing of his property; but when this bill was brought, the property had been conveyed more than one year, and wholly beyond his control. The injunction could not affect it. Under the statute no lien was created by the injunction.

*Heath & Willard*, for the defendant Hattie V. Adams.

The conveyance to the orator was void as against the wife, because made in fraud of her rights. It was within the statute against fraudulent conveyances. R. L. s. 4155; *Foster* v. *Foster*, 56 Vt. 540; *Livermore* v. *Boutielle*, 11 Gray, 217; *Burrows* v. *Purple*, 107 Mass. 428; *Stuart* v. *Stuart*, 123 Mass. 370; *Brooks* v. *Caughran*, 3 Head, 464; *Nix* v. *Nix*, 10 Hirsh. 546. The court in decreeing the alimony passed the title of the property to the wife. The statute does not require such an injunction as this to be recorded. The injunction by its own proper force affected all the funds in the hands of the orator.

The opinion of the court was delivered by

WALKER, J. This is a bill of interpleader by which the orator asks leave to pay the funds in his hands under a conveyance to him by Josiah W. Seaver for certain purposes under a so-called trust, to such one of the defendant claimants as the court shall decree it of right belongs.

It appears from the pleadings and master's report that on the twenty-sixth day of October, 1879, Josiah W. Seaver, of Waitsfield, who then was the lawful husband of the defendant, Hattie V. Adams (then called by the name of Seaver), having confessed that he was guilty of the crime of arson in burning

several farm-buildings in that vicinity, among which were the barns of the defendant George W. Folsom, and expecting to be confined in the state prison in punishment therefor, sent for the orator and with his consent transferred and delivered to him substantially all his property, which consisted of the following notes : Two notes signed by William and F. G. Farr, one for $430 and one for $70 ; also two notes signed by L. W. Seaver, one for $200 and one for $10, with the accrued interest on the same.  These notes were delivered to the orator upon condition that he collect and pay from the avails thereof certain small bills mentioned, and procure for Josiah counsel in the arson cases, and that the balance of the fund should be held by the orator for the. support and maintenance of his wife, Hattie V. Seaver, so long as she remained his wife, but no longer. This so-called trust was further conditioned that if his wife Hattie should die or obtain a bill of divorce from him, the funds then remaining in the hands of the orator should no longer be used for her benefit and support, but should be applied and appropriated to the use and benefit of his mother, Mary Seaver, during her life, and if any sum remained at her death, it was to be appropriated to the use of his brother.

The orator caused a memorandum of this conveyance and trust to be made in writing on the twenty-seventh of October. Hattie, the wife of Josiah, knew that this property was put into the hands of the orator, but it is not found that she knew or assented to the terms and conditions under which the property was passed over to him, or that she accepted of its provisions.

On the twenty-seventh of October, the said Josiah W. Seaver was arrested upon the charge of arson, of which he had previously confessed he was guilty, and committed to jail in Montpelier.  The Washington County Court being then in session, an information was immediately filed against him for the crime of arson, to which he pleaded guilty, and was thereupon sentenced by the court to be confined in the state prison for the term of twenty-five years, and was confined in prison upon said sentence.

The orator collected $525.80 on the notes thus passed over to him by Josiah, and paid debts to the amount of $56.17, which left in his hands $469.63. He thereafter paid Hattie one year's interest on this balance, $28.15, and for taxes, etc., $11.81; the balance with the accumulations, less taxes, is still in the hands of the orator.

The two notes against Levi W. Seaver have not been collected, as they are not collectible. The orator allowed, by direction of Josiah, $60 to Levi on said notes for the support of his mother in 1879 and 1880 under a previous contract.

In February, 1881, Hattie brought her petition for a divorce from Josiah returnable to the March Term of Washington County Court, setting up as a cause his confinement in state prison; on which an injunction was granted forbidding Josiah disposing of his property pending the divorce proceedings, which was duly served. At said March Term of court, and on the twelfth day of April, the said Hattie was by said court granted a bill of divorce from said Josiah by reason of his confinement in prison and allowed to resume her maiden name of Adams. On the granting of this divorce the court decreed to her as alimony all the funds in the hands of the orator under the so-called trust in whatever form they might be. This term of court was adjourned *sine die* April 14. On the fifteenth day of April the defendant George W. Folsom sued out a writ against Josiah W. Seaver, returnable at the next September Term of the court, on a judgment obtained by him at said March Term against Josiah in an action of trespass, *quare clausum fregit*, for burning his property; and therein summoned the orator and Levi W. Seaver, as trustees of Josiah. This writ was served on them as such trustees April 18, and duly entered in court, where the cause is now pending. The orator was notified of Hattie's divorce, and also that all the funds remaining in his hands of the property passed over to him by Josiah were decreed to her as alimony by her attorney by a letter sent to and received by him before the service of the trustee writ upon him. Levi was not notified of this

decree of alimony before the service of the trustee writ upon him.

The defendants, Levi W. Seaver, the brother of Josiah, and Mary Seaver, his mother, answered the orator's bill, substantially admitting the allegations thereof, but made no claim to the property in the hands of the orator otherwise than they pray that the fund may be held for the support of Mary pursuant to the condition of the so-called trust. Mary has deceased pending this proceeding, and no claim is made in this court in behalf of her or her estate. No appearance or argument has been made in this court in behalf of Levi, and he makes no claim to the fund in his own behalf in his answer.

The issue presented in this court is wholly between the defendant Hattie V. Adams and the defendant George W. Folsom.

The defendant Hattie claims to hold the fund on the ground that the conveyance or transfer of the property by Josiah to the orator was fraudulent and void as against her, and that the decree of the County Court granting this property to her as alimony passed the title of the same to her, and that her title thereto was perfected by her notification to the orator of her decree of alimony before the service upon him of the defendant Folsom's trustee writ.

The defendant Folsom claims to hold the fund on his trustee writ on the ground that the conveyance of the property to the orator was fraudulent and void against him as a creditor of Seaver; and claims that the conveyance was not fraudulent and void as to Hattie, because it was personal property, and the husband had the right to dispose of his personal property, whether the wife understood the terms of the conveyance or not, even if done with the intent to defraud his wife of any right or duty she had against him, or to deprive her of the use of it.

So the principal question presented by the case is whether the defendant Hattie V. Adams is within the protection of section 4155, R. L., which makes void fraudulent conveyances of

property as to the injured party, so that the conveyance alleged to be fraudulent was void as against her. If she is within the protection of· this statute, and the conveyance was fraudulent, the· property, as to her, though in the hands of the orator under a so-called trust arrangement, was still the property of her husband and subject to any lawful order of court, as his property and the title and ownership thereof was legally passed to and vested in her by the order of court decreeing it to her as alimony.

Section 4155, R. L., provides that: "Fraudulent and deceitful conveyances of houses, lands, tenements, or hereditaments, or of goods and chattels; all bonds, bills, notes, contracts and agreements; all suits, judgments and executions made or had to avoid a right, debt or duty of another person, shall, as against the party only whose right, debt or duty is attempted to be avoided, his heirs, executors, administrators and assigns, be null and void."

No distinction is made in this statute between realty and personalty. It includes all kinds of property and choses in action. All conveyances of property made or had to avoid a right, debt or duty of another person are made void as against the party whose right, debt or duty is attempted to be avoided. It is not designed to protect creditors alone, in the strict sense of the term. It embraces all persons who have a *right* or debt against the conveyancer, or to whom he owes a *duty*, which he attempts to avoid.

The master finds that "the placing of the property in controversy in the orator's hands by the said Josiah W. Seaver was done in contemplation that his wife might get a bill of divorce from him, as he had confessed to the burning of a large amount of property of which he was sure to be convicted and sent to the state prison, and he did this to place the property so she would not get it if she obtained a divorce, as he then well knew what her rights would be in reference to a divorce." This is an express finding that the notes were delivered to the orator for the purpose of avoiding the payment of alimony

which might be decreed to his wife Hattie on the granting to her of a divorce from him, which he expected and well understood she ultimately would have a cause for by reason of the punishment consequent upon his crime. It was done with the intent of defrauding his wife of her *right* to alimony out of his property.

It was held in *Foster* v. *Foster*, 56 Vt. 540, that a claim for alimony is incident to and consequent upon divorce ; and that a wife having a cause for divorce, though not in strict language a creditor of her husband, stood to him in the relation of a creditor having an inchoate right of payment of whatever alimony might thereafter be decreed to her, and that therefore she came within the purview of the statute making void fraudulent conveyances of property as to the party injured.

In the case at bar the cause of divorce did not exist at the time of the delivery of the notes to the orator, but the husband had committed and confessed a crime, upon the punishment for which a cause for divorce was consequent ; upon the due execution of the law the cause would in all probability arise. Nothing but death could thwart the punishment sure to follow. The wife stood to her husband practically in the condition of a wife having a cause of divorce. He understood that a right and claim for alimony would follow his criminal act, and fraudulently attempted to avoid it by the conveyance of all his property to the orator, cutting off all his wife's right to it in case she obtained a divorce. The conveyance was made expressly to defeat her right to alimony, and was to take effect against her on her obtaining a divorce. The conveyance did not become absolute as against her, and operate to defraud her of her right to alimony until after the cause of divorce actually existed, so that the conveyance must be treated the same as a fraudulent conveyance made after the cause of divorce had accrued. The cause of divorce followed the husband's punishment, and a right of alimony accrued to the wife, as was expected. She asserted her right under the law, and obtained a divorce, whereupon the conveyance of the property to the

orator became absolute against her, and a fraud upon her, as it was the consummation of his fraudulent attempt to defraud her of her right to alimony out of his estate. She was as much the victim of his fraud as if the cause of divorce had existed at the time of conveyance, and we think it clear that the statute (sec. 4155) is broad enough to protect her. It protects every person whose right, debt or duty is attempted to be avoided. The language is very comprehensive; and no principle of public policy or construction will exclude from its protection the wife whose right to support and alimony out of her husband's prop-erty is fraudulently attempted to be avoided.

It was held in *Beach* v. *Boynton*, 26 Vt. 725, that although the words " right and duty " are limited to such rights and duties as are of the nature of debts existing *ex contractu*, yet, even with that limitation, they are far more extensive in their signification than " debt " in its strict sense.

It is true, no right existed on the part of the wife, or any duty on the part of the husband, which could form the basis of an action at the time of the conveyance; but this was not indispensable. It is not necessary that the right be perfected and due at the time. It is sufficient if there be some inchoate right arising from some contract which may ripen into a debt. It may be contingent to some extent, like the right of a surety against his principal to indemnification before he has made any payment upon the principal's debt, which has been held to be within the evil intended to be remedied by the statute; and the surety has been allowed to stand as one having a debt against his principal from the date of suretyship, though not having paid anything upon the principal's debt at the time of the conveyance. So in this case the wife's right to alimony was contingent upon the punishment of the husband, her inchoate right of alimony out of his estate existing all the while by virtue of the marriage contract. This contingency was removed, and she became a *quasi* creditor, with a right of action before the conveyance became absolute as against her, and it was void as against her.

Green *v.* Adams.

To a certain extent the wife, in reference to her claim for support and for alimony, stands in about the same attitude to her husband that a creditor stands towards his debtor; and the statute seems to have been designed for the protection of the wife's rights arising from the marriage contract as well as for the protection of the creditor.

It is settled, as was said in the argument, that the law imposes no restraint upon the husband in the free and unlimited exercise of his right to alienate his personal property at will, and his real estate also, except his wife's homestead right therein, even though in the exercise of this right he strips himself of all means of supporting and maintaining his wife, provided he does so *bona fide*, and with do design of defrauding her of her just claims upon him and his estate, the *intent* in all such cases being the true test of the validity of the transaction. If it be done with a *fraudulent intent* as to the wife, the transaction is invalid, and she may assail the same under the statute. The *intended fraud* works the invalidity. *Ricketts* v. *Ricketts*, 4 Gill, 107; *Feigley* v. *Feigley*, 7 Md. 537; 2 Atk. 62; 2 Roper on Husband and Wife, 14.

2. The defendant, George W. Folsom, contends that his claim against Josiah W. Seaver, in tort (trespass *quare clausum fregit*), for burning his buildings, is within the statute against fraudulent conveyances, and that the conveyance in question was made with intent to defeat his claim for damages. Whether the conveyance was made with that intent or not is largely a question of fact to be found by the master. The master does not so find; nor does he find any facts showing such an intent. He finds that there was no evidence tending to show that Seaver put his property into the hands of the orator to prevent the same being attached by the persons whose buildings he had burned, and that the property was not in such shape that any of it could have been attached by them on writs brought to recover their damages. This finding negatives the fraudulent intent.

It is, moreover, well settled that Folsom's claim being

founded in tort is not within the statute. It was held in *Brooks* v. *Clayes*, 10 Vt. 37, WILLIAMS, Ch. J., that the word *right*, as used in the statute, is synonymous with "debt or duty," and does not include a mere right to attach property. In *Beach* v. *Boynton, supra*, REDFIELD, Ch. J., it was held that the words "right and duty" are limited to such rights and duties as are in the nature of debts, such as exist *ex contractu*, and that it was the purpose of the statute to exclude from its protection rights of the nature of torts, or not to include them. Under a similar statute the Supreme Court of Connecticut held that a voluntary conveyance made with intent to defeat a claim founded on a tort was not within the statute of that state against fraudulent conveyances, as it related only to claims arising out of contracts. *Fox* v. *Hills*, 1 Conn. 299; *Fowler* v. *Frisbie*, 3 Conn. 324.

So upon the facts reported as well as the law, the defendant, George W. Folsom, is not within the protection of the statute. The conveyance is not void as to him, and he cannot assail it. His rights with respect to the property included in the conveyance were affected by it. He cannot treat it as ineffectual and avail himself of the remedies provided by law for collecting his claim out of it as the property of the fraudulent grantor, because the property cannot be treated, as to him, as the property of such grantor. Therefore he cannot hold the funds in the hands of the orator on his trustee writ as the funds of Josiah W. Seaver, nor the two uncollected notes against L. W. Seaver. Neither is the custodian of J. W. Seaver's property, nor his debtor, so far as relates to defendant Folsom.

3. As the conveyance was void as to the defendant Hattie V. Adams, her rights in respect to the property conveyed, and its avails, were not affected by the conveyance. For the enforcement of her claim for alimony, the payment of which was attempted to be avoided, the property conveyed was still her husband's property subject to the order and process of court. The County Court, in its decree of alimony, properly treated the property conveyed, and its avails, as though such convey-

ance had not been made. The decree of alimony to the defendant, Hattie V. Adams, by the County Court, included all the funds and property remaining in the hands of the orator in whatever form the same might be. This decree avoided the whole conveyance, and passed the title of the fund remaining in the hands of the orator and the two uncollected notes against L. W. Seaver to said Hattie, and she is entitled to hold the same against the defendant George W. Folsom, and the other defendant. She would also hold the money in the hands of the orator even if Folsom's claim was within the statute; for the decree, and the notification thereof to the orator, established and perfected her right to it before the service of the trustee writ.

The result is that the decree of the Court of Chancery is modified in part and reversed in part, and the cause remanded to the Court of Chancery, with mandate that a decree be made by said court that the defendant Hattie is entitled to all the funds remaining in the hands of the orator arising from the collection of notes transferred to him, and the accumulations thereof, less such disbursements and costs as may be allowed the orator by the court, and also to the uncollected L. W. Seaver notes; that the orator deliver to the defendant Hattie the two uncollected notes against L. W. Seaver, and pay to her the amount of funds in his hands at the time of the decree of alimony arising from collections made and all accumulations thereof, including collections since made, if any, after deducting taxes paid thereon, and such costs as may be allowed the orator by the Court of Chancery in this proceeding. If the orator and the defendant Hattie do not agree as to the amount thus to be paid over, the cause to be referred to a master to ascertain and report the amount and decree to be made according to the amount allowed thereon by the court. As the question of costs was reserved in the Court of Chancery no order is made in this court in respect to costs in that court. In this court the orator is not to recover or pay costs; but the defendant Hattie is to recover her costs of the defendant Folsom, to be taxed and allowed.