### HOLLAND *v.* HOLLAND.

1. FRAUDULENT CONVEYANCES — HUSBAND AND WIFE — DEED TO DEFEAT ALIMONY.

> Where a husband, immediately before instituting divorce proceedings, to avoid paying alimony, conveys his property to his mother without any money consideration, procuring by false representations the wife's signature to the deed, the wife, on securing a decree on her cross-bill, may have the deed set aside as fraudulent, under 2 How. Stat. § 6203, providing that conveyances made with intent to hinder, delay, or defraud creditors or "other persons" of their lawful suits, damages, forfeitures, debts, or demands, shall, as to the persons, so hindered, delayed, or defrauded, be void.

2. PROBATE COURTS—DISALLOWANCE OF WILL—COLLATERAL ATTACK.

> Where persons go into probate court, and, on evidence introduced, procure an adjudication that a will is void, and have it disallowed, they cannot collaterally attack such judgment.

Appeal from St. Clair; Vance, J.    Submitted May 10, 1899.    Decided September 12, 1899.

Bill by Ida Holland against Lavina Holland and others to set aside a deed.    From a decree for complainant, defendants appeal.    Affirmed.

*William Baird, C. A. Hovey,* and *A. E. Chadwick,* for complainant.

*Avery Bros. & Walsh* (*Phillips & Jenks,* of counsel), for defendants.

Long, J. This cause was heard in the St. Clair circuit court, in chancery. The bill was filed to set aside a deed of certain real estate, so that a claim for alimony might be collected by complainant out of the interest of her husband in said lands, in a divorce proceeding in which complainant had procured a decree of divorce against her husband, Henry Holland. The court filed a written opinion in the case, setting out the facts found by him from the evidence, and in which he determined that the deed should be set aside. The facts as found are as follows:

"Ida Holland and Henry Holland were married in 1889, and have two children. Henry Holland was the son of Robert Holland, who died in 1893, leaving his widow, Lavina Holland, a daughter, Mary L. Cottrell, a son, Henry Holland, a son, Charles Holland, all of full age, and a daughter, Etta Holland, and a son, Robert Holland, who were minors. Etta Holland has since attained her majority, and Robert is still a minor.

"Robert Holland, Sr., who died in 1893, left what purported to be a last will and testament. In terms, this will made provision for his wife and for all his children; the allowance to Henry Holland, the defendant in this case, being about $200. His estate was worth in the neighborhood of $100,000. Robert Holland, in his lifetime, and especially later years of his life, was not pleased with the conduct of his son Henry, and this was known to Henry and the other heirs. When the will was read, shortly after his death, it was discovered for the first time that he had left only about $200 to Henry. Henry was displeased with this allowance, and the widow was dissatisfied with the allowance to her. Henry threatened to contest the will, and the heirs came to Port Huron at the day set for the hearing and probating of the will, and while at Port Huron had a conference looking towards an adjustment of their differences. They finally agreed verbally that the will should be disallowed, allowing Henry to take his share of the estate with the rest of the children, but with the understanding and agreement on the part of Henry that he should, by a conveyance in which his wife should join, convey whatever interest he should thus acquire in the estate to his mother. The understanding between the parties at that time was that the mother should take this share which would come to Henry under the statute, and,

while not bound strictly to give him any particular portion at any particular time, it was the understanding of the parties to that arrangement that it was a conveyance to the mother with the expectation that it would be used for Henry's benefit. The minor children, Etta and Robert, were not represented in that arrangement, excepting through their mother; she not yet having been appointed guardian, but was appointed their guardian on the same day, after the will was disallowed. With this understanding they went before the probate court, and witnesses were sworn, and the probate court entered an order disallowing the will. This was in April, 1893, and this order of the probate court has never been appealed from. No conveyance was made by Henry or his wife at that time, but from time to time his mother and his brother Charles spoke to him about making this conveyance, but he did not do it.

"In the summer of 1895 he was sailing, and on his return home learned of what he claimed was a grievance against his wife, justifying, as he thought, a divorce. He came to Port Huron to consult an attorney (the same attorney who had advised in the disallowance of the will) concerning his divorce on December 27, 1895, and in the consultation the attorney discovered that he had not yet made this deed to his mother, and he was advised then to do it at once; and the attorney drew up the deed, and Henry took it to Marine City, where he lived, gave it to his brother Charles, with instructions to take it to one Saph, a notary public, and have Saph go to his house that evening and have it executed. In all the arrangements up to this time, Ida Holland, the complainant, did not know of the arrangement between the heirs that Henry was to convey to his mother his interest in the estate as a condition of the disallowance of the will. At the time that Henry returned after the making of the deed, or just before coming to Port Huron to consult his attorney, where he had the deed drawn, he represented to his wife that he was having difficulty with the other heirs, especially with his brother Charles, who he thought would beat him out of his interest in the estate, and said he could sell his interest to his mother for $7,000, and procured his wife's consent to such a sale. When the notary appeared there with the deed, it was not read to her, but she signed it, supposing and believing that it was to carry out the arrangement which Henry had represented to her;

and in view of that fact she signed and executed the deed, which bears date December 27, 1895, and is recorded December 28, 1895, in Liber 121, page 530, in the register of deeds' office in St. Clair county, and purports to convey all the interest, real and personal, that Henry Holland had in the estate of his father, deceased. At this time he did not make known to his wife that he had learned anything detrimental to her conduct, or that he contemplated or was considering the fact of a divorce, but, on the other hand, induced her to believe that they would move to Toledo, and start a clothing store there with the money which he was to receive from his mother for his interest in the estate.

"Shortly afterwards, in January, 1896, he filed his bill for divorce, and the complainant, Ida Holland, filed an answer and cross-bill, claiming affirmative relief on the ground of cruelty. When the divorce case came to a final hearing on pleadings and proofs in open court, a decree was entered on the 30th of January, 1897, dismissing the complainant's bill, and giving the defendant in that suit, who is the complainant in this, a decree for divorce on the ground of cruelty, and this decree has not been appealed from. A determination was reached that Ida Holland, the present complainant, was entitled to alimony; and the matter was referred to a circuit court commissioner to take testimony as to the value of the property or interest which Henry Holland had, with the view to ascertaining the proper amount which he should be required to pay as alimony to his wife, and for the support and education of his children. The bill in this cause was then filed to set aside the deed from Henry and his wife to his mother, Lavina Holland, above referred to, and dated December 27, 1895, so that in the final hearing on the question of alimony the court would be advised and know what property Henry Holland had, from which and out of which alimony should be allowed.

"At the time this deed was executed, on the 27th day of December, 1895, the complainant, Ida Holland, was confined to the house, and most of the time to her bed, as the result of childbirth on December 17th previous.

"Robert Holland, deceased, owned, and since his death the estate owns, the place where Henry and Ida Holland lived at the time the deed to the mother was made and the divorce proceedings started. While Henry may have assisted somewhat in repairing the house, the title to the

property remained in his father, and since his father's death in his estate. He went there to live by permission of his father, and I am unable to see that there is any foundation for the claim that there is any homestead rights in that property belonging either to the complainant, Ida Holland, or to Henry Holland, or to both of them.

"No money consideration was paid to Henry Holland for that conveyance, nor did any money consideration pass from his mother to him, nor between any of the heirs of Robert Holland, deceased, directly or indirectly. It is my conclusion from all the circumstances and the conduct of the parties that Henry Holland did not intend to deed his interest in his father's estate to his mother, as he orally promised to do when the will of his father was disallowed, and that his mother and brothers and sisters did not intend to compel or attempt to compel him to do so, and that the deed he made to his mother December 27, 1895, would not have been made but for the fact that he anticipated a divorce would be granted to him from his wife, and he by that means could put his property beyond the reach of his wife and the court in case alimony was awarded to her."

The conclusions of law are as follows:

"By statute in this State, conveyances of an estate or interest in lands, or in goods or in things in action, etc., made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, as against the persons so hindered, delayed, or defrauded, shall be void. 2 How. Stat. § 6203. It will be noticed that this statute is not limited to creditors, but extends to *other persons*, and is not limited to debts, but extends to suits, damages, forfeitures, and demands. The cause for which complainant was granted a divorce was one existing prior to December 27, 1895, the date of the deed in question. It is my conclusion that when a wife has a cause for divorce, and her husband, to avoid paying alimony, conveys away his property, the conveyance is void, under this statute, as to her. While not in the strict letter a creditor, she comes within the term 'other persons;' and while not, strictly speaking, delayed in the collection of a debt, she is hindered, delayed, or defrauded out of her demands. *Lott* v. *Kaiser*, 61 Tex. 673; *Feigley* v. *Feigley*, 7 Md. 537 (61 Am. Dec. 375); *Bouslough* v. *Bouslough*, 68 Pa. St. 495, 500; *Tyler* v. *Tyler*, 126 Ill. 525 (9 Am. St. Rep.

642); 2 Bish. Mar. Div. & Sep. §§ 1103, 1104, and cases cited. This principle controls when the conveyance is made before the divorce proceedings are commenced, but in anticipation of them. *Damon* v. *Damon*, 28 Wis. 515; *Green* v. *Adams*, 59 Vt. 602 (59 Am. Rep. 761); *Bailey* v. *Bailey*, 61 Me. 361.

"The deed must be treated as if Mrs. Holland had not signed it, her signature having been obtained by fraud.

"I am also of the opinion that when the Hollands went into probate court, and, upon evidence introduced, procured an adjudication that the will was bad, and had it disallowed, they cannot now collaterally attack that judgment. The complainant cannot be estopped, because she was not a party to that arrangement. She became vested with a wife's interest the moment the will was disallowed. She never agreed to convey it away, and has never knowingly done so. The mother and brothers and sisters allowed that title to stand in Henry up to December 27, 1895, and kept her in ignorance of a secret arrangement which, if carried out, would devest her husband of his entire property, and her of her dower rights and such other rights as grow out of the marriage relation. To allow this deed to stand would cut off all chance for dower, if under her decree of divorce she should be entitled to dower, and turn her out on the world, with her children, penniless, while the mother of her husband would have her husband's share of his father's estate without paying one cent for it, and holding it for Henry's interest. I know of no rule of equity that will sustain such a proposition.

"The deed must be set aside, so far as complainant is concerned, and the interest conveyed by it subjected to any rights which complainant may have either for alimony or dower or both. Complainant should recover costs, including a solicitor's fee of $30."

We think the facts found by the court are supported by the evidence, and that the findings support the conclusions of law reached. We do not deem it necessary to discuss the case further than it has been discussed by the judge below.

The decree below must be affirmed.

The other Justices concurred.